--------o-o-o--------

### Humphrey Shaw v. Ebenezer Davis and Another.

Where two plaintiffs sue upon contract, it is not error in the court to admit in evidence a letter from defendant to one of the plaintiffs, and which is claimed by them to relate to the business in which they were engaged for defendant. Plaintiffs have a right to introduce it, and to follow it up with evidence to show that it does relate to such business.

Where plaintiffs were to run for defendant his staves "at and near T." at a specified price, — *Held*, That whether a point a mile and a half from there was "near T." within the meaning of the contract, was a question of fact for the jury, and could not be decided by the court as matter of law.

Where plaintiffs (who were not common carriers) contracted to take *all* the staves of defendant at a certain point, and raft and run them to a certain other point, and land and pile them for $8 per thousand, and to keep a strict account of the expenses, and if it should be found to exceed $8 reckoning fair prices for labor defendant was to pay the extra expense, but the entire price not to exceed $10, — *Held*, That, as there was nothing in the contract to show that plaintiffs were to be compensated for any risks in running the staves, and as they did not expressly assume all risks, they were only bound to ordinary care and dilligence, and could not be held to have bound themselves to deliver the whole quantity of staves at all events, and to receive no compensation if any were lost without their fault.

*Heard October* 11*th*. *Decided October* 18*th*.

Error to Saginaw Circuit.

Ebenezer Davis and Alonzo W. Davis brought suit against Shaw, declaring in assumpsit on the common counts for work and labor performed, and money paid laid out and expended for him. Shaw pleaded the general issue, with notice that the work declared for was done under a special contract in writing, dated March 9th, 1858, whereby plaintiffs agreed to take all the butt staves of defendant near Tuscola, and run and land them on the bank of the Saginaw river near Zilwaukie, for $8 per thousand, or in case the

expense of such running should exceed that sum, then defendant should pay such excess until the price should reach $10; that plaintiffs by carelessness and otherwise lost a large number of said staves, and did not deliver them near Zilwaukie; that in part to make up for such loss, they picked up and brought down worthless staves of defendant and other persons, to fill out the count, and did not deliver all the staves they might and should have done under said contract; to the damage of defendant $300, which he should recoup on the trial.

On the trial before a jury, the plaintiffs offered in evidence the following letter from defendant to one of them:

"*East Saginaw*, April 24, 1858.

É. DAVIS, Esq. DEAR SIR: I have some 8 or 9000 pipe and hhd. staves (nearly all pipes) about one and a half miles above Theodore Smith's staves. Will you be sure and put them on your rafts as you come down? The staves are not culled, and I should be glad to have you cull them, if you can do so. I however hope to have them culled before you get there. Please take on all the staves that you culled for the Baldwins, as I have paid the cash on them. I hope you are getting along well. Mr. Richardson says, you are all right. Please let me know if you can not raft the pipes and hhds. above named, and see Mr. Lee about the thing, so that one of you will attend to it without fail.

Your friend, H. SHAW."

To the introduction of this letter defendant objected, because it was written to only one of plaintiffs. The court overruled the objection, and admitted the testimony, and defendant excepted.

Plaintiffs then offered and read in evidence a contract in writing as follows: "Article of agreement made this 9th day of March, 1858, between Humphrey Shaw of East Saginaw, Michigan, of the first part, and Ebenezer Davis, and Alonzo W. Davis, of Tuscola, Michigan, of the second part, as follows, to wit: The parties of the second part in con-

sideration of payments to be made as hereinafter named, agree and bind themselves, their heirs and assigns, to take all the butt staves belonging to the party of the first part, at and near Tuscola, county of Tuscola, and state of Michigan, from the places where they now are, and raft and run them to Zilwaukie, on the Saginaw river, or within three miles below, to the order of the party of the first part, and land and pile them up on the bank of said Saginaw river, on or before the first day of July next ensuing, for the sum of eight dollars per thousand, payable on delivery of all the staves as aforesaid. It is further understood and agreed by the parties hereto, that the parties of the second part are to keep a strict account of the expenses of rafting, running, and piling, as aforesaid, and if it should be found to cost over eight dollars per thousand (reckoning fair prices for labor, and not to include in said account the timber on which the staves is to be rafted), the party of the first part is to pay the extra expense; provided, however, and this agreement is expressly understood, that the entire price of rafting, running, and piling, as aforesaid, shall not be in any case over ten dollars per thousand."      [Signed by the parties.]

Plaintiffs then called Arthur Hill as a witness, and asked him, "What is it worth to run butt staves from the Baldwin place to East Saginaw?" Defendant objected to the question, that it already appeared that the Baldwin place adjoins the county and town of Tuscola, and was within one and a half miles of the town of Tuscola. The circuit judge decided that, as it already appeared that the Baldwin place was in Saginaw county, the proposed evidence was proper, and allowed the question to be answered; to which defendant excepted.

Plaintiffs also gave evidence tending to show that the rafts were properly constructed to run down said butt staves, and that plaintiffs used care in running them down; and defendant gave evidence tending to show the contrary. The

SHAW *v.* DAVIS.

parties having rested, defendant requested the circuit judge to charge the jury that in case they found that the parties contracted that the plaintiffs should deliver all the butt staves at and near Tuscola to the defendant at East Saginaw, in that case plaintiffs were bound to raft and deliver all, and that ordinary care and dilligence was not sufficient. The circuit judge declined so to charge, but on the contrary did charge that under the contract, if the jury should find that the plaintiffs used all the care and dilligence that could be used under the circumstances, and all the care that a prudent and cautious man would use to protect his own property, then plaintiffs were not liable for any staves lost. To this charge and refusal to charge defendant excepted, and the jury having returned a verdict for plaintiffs, defendant removed the cause to this court by writ of error for review on the exceptions.

*Webber & Wheeler*, and *W. Gray*, for plaintiff in error.

*Moore & Gaylord*, for defendants in error.

CHRISTIANCY J.:

There was no error, in the admission of Shaw's letter to E. Davis, of April 24th, 1858. Though written to but one of the plaintiffs below, and therefore, without further evidence, it might have been of no avail, or required to be withdrawn from the jury when their evidence was closed, yet they had the right to its introduction as one link in the chain of evidence, and to follow it up with evidence tending to show that it related to the business in which both plaintiffs were engaged for defendant; and that, from all the circumstances, it must have been, or was probably, understood by all parties to be, substantially, a request from the defendant to both the plaintiffs to run the staves therein mentioned.

The subsequent evidence in the case, showing the previous contract between plaintiffs and defendant, for the

running of other staves, and the probability, at least, that plaintiffs, at the date of the letter, were engaged in running the staves previously contracted, rendered it at least a fair question for the jury, whether such was or was not the understanding which all parties had of the letter.

The second error assigned is, that the circuit judge improperly admitted the evidence of the witness, Arthur Hill, showing what it was worth to run butt staves from the Baldwin place to East Saginaw. This objection seems to have been based by defendant below upon the ground that the Baldwin place, though in the county of Saginaw, was "near Tuscola," and therefore, that the butt staves run from the Baldwin place must be held to be included in the written contract previously entered into, and which were to be run for a specific price. Whether the staves at the Baldwin place were a part of those referred to in the contract, or not, or whether they were a part of those referred to in the letter of Shaw of April 24th, was not a question of law upon which the court was authorized to decide, but a question of fact for the jury, to be determined from the evidence in the case. It was therefore properly left to the jury, and the second error is not well assigned.

The third error assigned is, that the circuit judge erred in refusing to charge the jury, that in case they found the parties contracted that the plaintiffs should deliver all the butt staves at and near Tuscola, to the defendant at East Saginaw, in that case the plaintiffs were bound to raft and deliver *all*, and that ordinary care and diligence was not sufficient; and in instructing the jury that, under the contract given in evidence, if the jury found that the said plaintiffs used all the care and diligence that could be used under the circumstances, and all the care that a prudent and cautious man would use to protect his own property, that then the plaintiffs were not liable for any staves lost.

The exceptions upon which this error is assigned, are

based entirely upon the construction to be given to the written contract of March 9th, 1858. The counsel for plaintiffs in error claim that, by the true construction of the contract, the plaintiffs below were bound, at all hazards, to deliver *all* the staves before they could claim pay for running any of them; that no risks incident to the running, and, no loss of the staves, though happening in spite of the utmost diligence on their part, can excuse this literal performance: that such is the obligation which they have voluntarily assumed by the contract itself.

That the plaintiffs below were not common carriers, under this contract, is too evident to require comment; nor does the plaintiff in error insist that they became insurers against all the risks in question, on that ground, but by their express contract.

That there must be risks of considerable magnitude incident to this mode of running staves, there can be no doubt, from the nature of the case; and the evidence also tends to show it. And it can not be doubted that it was competent for the plaintiffs below to assume these risks, if they choose to do so, by their contract. If such was the intent of the parties, as evinced by the contract, they must abide by it, unless it should be found clearly unconscionable.

These risks are not expressly mentioned in the contract But the intention of plaintiffs below to assume them is sought to be inferred from the provision of the contract by which they agree "to take all the butt staves, &c., at and near Tuscola, from the places where they now are, and raft and run them to Zilwaukie, and land and pile them up on the bank of Saginaw river, on or before the first day of July next ensuing, for the sum of eight dollars per thousand, payable on delivery of all the staves as aforesaid."

Whether this provision, without reference to any other portion of the contract, could be fairly construed as in-

tended to make the plaintiffs below liable for all risks and loss occurring without their default, and which could not be avoided by ordinary diligence, it is not necessary here to determine; as we are to look to the entire contract, and to the subject matter, for the intent of the parties. It can not, certainly, be presumed, without a clear indication of such an intent, that men of ordinary intelligence would, without compensation, take upon themselves such extraordinary risks, and deliberately agree to lose all the labor and expense of running down these staves, if, without their fault, from accident or causes beyond their control, some of the staves should happen to be lost, and they should fail literally to deliver the whole. The natural inference, therefore, to be drawn from the contract, and subject matter, would be against such an intention, unless it should appear at least probable from the contract, that the price or compensation was fixed with reference to such risks; in other words, that the compensation fixed exceeded the cost of the work, irrespective of such risks; as it would be preposterous to suppose any sane man would assume such risks for nothing. Now, it not only does not appear from this contract that the compensation was made with reference to these extraordinary risks, but there is strong affirmative evidence, on the face of the contract, that the compensation was fixed entirely irrespective of these risks, and therefore, that neither party contemplated such risks as having been assumed by the plaintiffs. Thus, the contract proceeds to provide, that the plaintiffs were to keep a strict account of the expenses of the rafting, running and piling, and if it should be found to cost over eight dollars per thousand (reckoning fair prices of labor, and not to include in said account the timber on which the staves were to be rafted), the defendant below was to pay the extra expense; provided the entire price of rafting, running, and piling should, in no case, exceed ten dollars per thousand.

SHAW *v.* DAVIS.

This, we think, shows very clearly that the compensation was not fixed with reference to these risks, and therefore, that neither party contemplated them as being covered by the contract. The provisions of the contract requiring the parties to run all the staves, and that payment was to be made "on delivery of all the staves as aforesaid" refer to the extent of the employment, and were intended to indicate that payments were not to be made during the progress of the work, but upon its completion.

The result therefore, is, that the plaintiffs below, like other ordinary bailees, were only bound to ordinary diligence, and that the charge of the court, in this respect, was substantially correct. At all events, if the judge erred at all, it was in favor of the defendant. The former portion of the charge, alone, might have held the plaintiffs to a stricter rule of diligence than the law requires; but of this the defendant could not complain, and the latter portion of the charge expresses the true rule.

The judgment of the court below must be affirmed.

The other Justices concurred.