WILLIAM H. INGLISH v. EDWARD E. AYER.

*Principal and agent—Limitation of authority.*

1. Persons dealing with a *general* agent have the right to act upon the presumption that he is authorized to do and perform all things within the usual scope of his principal's business.

2. The authority of a *general* agent, within the usual scope of the principal's business, cannot be limited as to third parties by private instructions from the principal.

Error to Iosco. (Simpson, J.) Argued January 29, 1890. Decided February 20, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Charles R. Henry,* for appellant, contended:

1. The evidence as to the authority of Widner was conflicting, and, to say the least, it was a question which ought to have been submitted to the jury; citing *Sheahan v. Barry*, 27 Mich. 217; *Corbin v. Sage*, 44 Id. 142; *Somers v. Losey*, 48 Id. 294; *Moore v. Hall*, Id. 143; *Spalding v. Archibald*, 52 Id. 365; *Turner v. Ins. Co.*, 55 Id. 236; *Myron v. Railroad Co.*, 61 Id. 387; *Williams v. Shelden*, Id. 311.

2. On the question of the duty of a party who deals with one claiming to be an agent to ascertain the extent of his authority, counsel cited *Trudo v. Anderson*, 10 Mich. 357; *Rice v. Peninsular Club*, 52 Id. 87; *Baird v. Randall*, 58 Id. 175.

*Hatch & Cooley*, for plaintiff, cited no authorities.

GRANT, J. The defendant, Ayer, resided in Chicago, and was engaged in the business of buying and selling railroad material, ties, telegraph poles, and things of that nature. One Lot S. Smith had the entire management of his whole business. One John A. Widner was defendant's agent at Alpena, Mich., with authority to buy ties, poles, etc., in that vicinity, to make contracts for that purpose, and to advance money on them. This he was in the habit of doing.

November 2, 1885, plaintiff and defendant, through his agent, Widner, entered into a written contract by which he agreed to buy for defendant all the cedar ties in the round he could, at prices to be dictated by defendant, and was to receive certain stipulated prices for sawing, floating, piling, and furnishing ground for storing. Certain materials were furnished under this contract in regard to which there is no dispute.

The dispute between the parties arises out of a transaction which plaintiff contends was separate and distinct from this agreement, but which the defendant contends was included within it. The testimony is in direct conflict. The evidence on the part of the plaintiff tended to show that the defendant and one Tuttle had had a previous deal, and that Tuttle was indebted to defendant.

Widner, learning that Tuttle had some timber suitable for ties, requested plaintiff to investigate and report. Plaintiff did so, and reported by letter that Tuttle would sell the stumpage, and let it go on his debt to defendant. The purchase was made. Widner requested plaintiff to make arrangements for getting it out. Plaintiff saw one Farrand, obtained a bid from him, and reported it to Widner, who instructed him to let the job to Farrand. Farrand took the job, and proceeded to get out the timber. Farrand wanted some help in advance, and Widner told plaintiff to "start him going." Plaintiff then advanced him some money. Afterwards Farrand wanted more money, and threatened to stop; whereupon Widner instructed plaintiff to advance more money, saying that it would make no difference if Farrand was a little behind in the spring,—he would let him a job another year. Later, Widner became dissatisfied with Farrand's work, and assumed the entire control, putting his own foreman in charge. There was other testimony, but the above is sufficient for the determination of the questions involved.

Defendant paid plaintiff at various times from December, 1885, to October, 1886, sums of money ranging from $300 to $800, and aggregating $4,400. This leaves the defendant indebted to plaintiff in the sum of $240.70, if defendant is liable for the moneys paid by plaintiff to Farrand.

We think the circuit judge correctly charged the jury that Widner, as the agent of defendant, had the authority to make the alleged agreement with plaintiff. He was the defendant's general agent at that point, and those dealing with him had the right to act upon the presumption that he was authorized to do and perform all things within the usual scope of the business. The only attempt to limit Widner's general authority was by showing—

1. That he had no authority to appoint any one else as agent for defendant; nor—

2. "To advance supplies and money for ties beyond what was received by him."

The obvious reply to the first proposition is that plaintiff was not an agent of defendant, in any view of the case. He was simply an employé. According to plaintiff's evidence, he did certain things for defendant at Widner's request, promptly reporting his action to Widner, who then acted on behalf of his principal. According to defendant, plaintiff was acting under the written contract.

The obvious reply to the second is:

1. Widner and Smith both testify that Widner had authority to make advances.

2. Defendant, having made Widner his general agent, could not limit his authority, within the usual scope of the business, by private instructions not known to the plaintiff. Whart. Ag. § 126; Story, Ag. § 127.

The circuit judge was therefore correct in limiting the inquiry of the jury to the questions of the making of this alleged agreement, and the alleged settlement between the parties; there being no dispute as to the amount involved.

The circuit judge was correct in refusing to submit to the jury the following questions, requested by the defendant, viz.:

"1. Was William H. Inglish authorized by the defendant to pay Farrand for more ties than were actually delivered to him, defendant?

"2. Was Inglish an agent of defendant, Ayer, in paying money to Farrand for cedar?

"3. Had Inglish authority from defendant to overpay Farrand for over 6,000 ties at the agreed price?

"4. Is the plaintiff's claim in this case for money paid Farrand by plaintiff for ties which never have existed?"

Error is alleged, in that the plaintiff was permitted to testify to conversations with parties about getting out

the Tuttle timber. Plaintiff testified that he had these conversations after Widner had requested him to employ some one to get out the timber, and that he reported them to Widner. They were therefore both competent and material.

There is no error upon the record, and the judgment must be affirmed, with costs.

CHAMPLIN, C. J., MORSE and CAMPBELL, JJ., concurred. LONG, J., did not sit.