MARGARET W. ALLIS, EXECUTRIX, ETC., AND WILLIAM W. ALLIS ET AL., EXECUTORS, ETC., v. CARL G. A. VOIGT AND WILLIAM G. HERPOLSHEIMER.

[ See 83 Mich. 537. ]

*Principal and agent—Scope of authority—Secret instructions—Special carrier of goods—Sale—Construction of contract.*

1. The authority of a general agent, appointed to carry out the terms of a contract by one of the parties thereto, cannot be limited within the scope of the business by private instructions of which the other party is ignorant.
2. A special carrier of goods is only bound to use ordinary care, and cannot be held liable except for negligence.

3. Plaintiffs' testator contracted with the defendants for the sale to them at a specified price of a power outfit, to be by him set up in their flouring-mill in the city of Grand Rapids, without expense to them, except that they were to do all teaming required in said city, and furnish all mason and carpenter work. The machinery was shipped, and the testator sent an agent to place it in the mill, who called upon the defendant to furnish the necessary teams and men to transport the machinery from the depot to the mill, which was done, and on the way a fly-wheel was broken, the title to which was still in plaintiffs' testator, and this suit was brought, the plaintiffs counting upon the alleged undertaking of the defendants to convey the wheel safely from the depot to the mill, and alleging their failure so to do, and that they carelessly, negligently, and unskillfully handled the wheel, and broke the same, and claiming damages for delay and loss of time in setting up the machinery, and for the value of the wheel. The plea was the general issue, and on the trial it became a disputed question of fact whether the person in charge of the team acted under the direction of the testator's agent (who was present and supervising the work of moving, defendants being absent) in loading and unloading the wheel, or whether such loading and unloading was directed by the defendants' said employé. A verdict was directed in favor of the plaintiffs for the value of the wheel and loss of time, on the theory of the contract liability of the defendants, as claimed by the plaintiffs, to deliver the machinery safely at their mill, and that they were therefore insurers. In reversing the judgment entered on said verdict, the Court hold that the requests of defendants' counsel should have been given to the jury, which requests were in substance as follows:

*a*—The defendants did not contract safely to carry and deliver the machinery from the depot to their mill, and were not insurers of the property.

*b*—The contract did not contemplate that plaintiffs' testator should transport the wheel to the depot only, but that he should erect the power outfit, including the wheel and other machinery, in defendants' mill, without expense to them, except that of furnishing the necessary teaming.

*c*—The defendants are not liable for the broken fly-wheel if the jury find that it was loaded under the immediate supervision of the testator's agent, who instructed as to such loading, and accompanied the load to the mill, and directed where the sleigh should be placed for the purpose of unloading the wheel, and that neither of the defendants was present or had anything to do with the actual transportation or the loading

or unloading of the wheel, and that the breakage occurred by reason of the wheel being loaded as directed by the testator's agent.

*d*—The defendants can only be held liable, in any event, for an injury resulting from their own negligence, or that of their agents, without the fault or negligence of the plaintiffs' testator or his servants or agents. They are not liable for the result of an accident; and it being the duty of the plaintiffs' testator under the contract to furnish all of the material, complete and erect the outfit in defendants' mill, and turn it over to them, the fact that, by an accident, a piece of machinery was broken while being transported from the depot to the mill, would not render defendants liable in this action.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued January 8, 1892. Decided February 5, 1892.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Uhl & Crane,* for appellants.

*Norris & Norris,* for plaintiffs, contended:

1. Defendants were bound to convey the machinery from the depot to the mill, and there deliver it safely for erection; and this is the only conclusion which can be reached when we consider the language of the entire contract, the situation and circumstances of the parties, and the actions of the defendants.

2. When one agrees to do teaming, he understands, because that is the common acceptation of the term used, that he is to load, haul, and unload something. "Teaming" means the operation of transporting a thing from one place to another by means of a team,—the carriage by team and wagon of an article from one place to another, including the hauling necessary to perform the work properly; citing *Hickok v. Thayer,* 49 Vt. 374.

3. The liability of Davis to defendants is unquestionably that of a common carrier. Defendants, if liable here, can recover of Davis, while in no event could plaintiffs do so, as their testator had no contract of carriage or anything else with Davis. That one not a common carrier may agree to be liable as such was held in *Shaw v. Davis,* 7 Mich. 318.

4. If, as we contend, no duty lay on plaintiffs' testator to do this

teaming, he could not be made liable for this breakage because McDonald advised or instructed Davis how to load and how and where to unload the wheel, since, if no such liability existed by contract, McDonald had no express · or implied authority to create it. He was simply a machinist sent to set up the engine, and had nothing else to do, as defendants were advised. He was to execute the contract so far as it remained unexecuted, and authority to fulfill a contract gives no power to change it; citing *Trudo v. Anderson*, 10 Mich. 357; *N. Y. Mine v. Bank*, 39 Id. 644; *Ruppe v. Edwards*, 52 Id. 411; *Hirshfield v. Waldron*, 54 Id. 649,

Long, J. This action grows out of a contract mentioned in *Allis v. Voigt*, 83 Mich. 537. That portion of the contract necessary to a discussion of the principles here involved is set out in that case.

The contract contains the following clause:

" The above machinery to be erected in the Crescent Mills, Grand Rapids, Michigan, without expense to you, except that you shall do all teaming required in Grand Rapids, and furnish all mason and carpenter work."

The declaration in the present case counts—

1. Upon the undertaking of the defendants safely to convey said fly-wheel from the depot at Grand Rapids to said mill, and their failure so to do.

2. That the defendants carelessly, negligently, and unskillfully handled the fly-wheel, and broke the same.

3. Upon damages for delay in the work.

Defendants pleaded the general issue, and on the trial the court below directed the verdict in favor of the plaintiffs for the value of the wheel and loss of time. Defendants bring error.

There is some conflict of testimony between the parties as to whether Davis, in loading the wheel, acted under the direction of Mr. McDonald, who was there, under the direction of plaintiffs' testator, to place the machinery in the mill.

At the close of the testimony, counsel for defendants asked the court to charge the jury as follows:

" 1. That under the contract between the parties, in evidence before you, the plaintiffs cannot recover for the broken fly-wheel in this action, and your verdict must be for the defendants.

" 2. The contract between the defendants and the plaintiffs' testator was that the latter was to construct, deliver, erect, and set up in the Crescent Mills, and fully complete, a power outfit, in said contract described, without expense to the defendants, except that defendants were to do the teaming, and furnish the mason and carpenter work, which teaming meant that the defendants were to be at the expense of the teaming in Grand Rapids.   Said defendants did not thereby contract to safely carry and deliver these goods from the depot of the railroad company into the Crescent Mills, and I charge you that the defendants were not the insurers of the property under said contract.

" 3 The plaintiffs' testator contracted with the defendants to erect in the Crescent Mills the power outfit aforesaid, ' without expense to you [defendants], except that you [defendants] do all the teaming required in Grand Rapids.'   This contract did not contemplate that plaintiffs' testator should transport the wheel to the depot only, and that the defendants should safely transport the wheel from the depot, but that the said plaintiffs' testator should erect the outfit, including the wheel and other machinery, in the defendants' mill, without expense to them, except that the defendants were to be at the expense of furnishing the teams.

" 4. That the defendants are not liable to the plaintiffs in this action for the broken fly-wheel if the jury shall find that Mr. McDonald took upon himself the direction as to the loading of the wheel, instructed Davis as to how the wheel should be loaded onto the sleigh, and instructed him as to the particular place at which it should be unloaded from the sleigh, and the breakage resulted therefrom.

" 5. If the jury find that on Saturday, the 21st day of January, 1888, the defendant Voigt called up Davis by telephone, but gave him no instructions as to the hauling; that thereupon McDonald entered into conversation with Davis, and gave him certain directions as to hauling, and made an appointment to meet him at eight o'clock on Monday morning following at the depot; that

McDonald and Davis did there meet on the following Monday morning, and that the loading of the wheel was done under the immediate supervision of the said McDonald, who instructed as to the loading, and accompanied the load to the mill, and directed where the sleigh should be located to unload; and further find that neither of the defendants was present, nor did they have anything to do with the actual transportation or the loading or the unloading, and the breakage occurred by reason of the wheel being loaded as directed by McDonald,—then I charge you that plaintiffs cannot recover.

"6. The defendants, in any event, could only be liable for an injury which resulted from their own negligence, or that of their agents, without the fault or negligence of the plaintiffs' testator or his servants or agents. The defendants are not liable for the result of an accident; and under the contract, it being the duty of the plaintiffs to furnish all the material, complete and erect the outfit in the mills, and after completed to turn the same over to the defendants, I charge you that the fact that, by an accident, a piece of machinery was broken when being transported from the depot to the mill, would not render the defendants liable in this action."

The court refused to give these requests, but took the plaintiffs' view of the case, as stated by counsel, as follows:

"That by the contract between the parties the defendants were to do all the teaming required in Grand Rapids,—that is, to transport the machinery (which plaintiffs' testator was to furnish and erect) from the cars or depot in Grand Rapids, and deliver the same at the mill where it was to be erected; that while the defendants, or those whom they hired, were so engaged in transporting the fly-wheel of the engine, they so handled it that it was broken; and that defendants are liable for the value of the wheel so broken, plus the value of the freight thereon from Milwaukee here, and less the value of the broken wheel as it was here after the breakage.

"That the defendants' employés so handled said wheel that it was broken, and that by reason of such breakage the plaintiffs' testator was delayed in the finishing of the erection of the plant contracted for, and that the plaint-

iffs are entitled to recover of the defendants for the time and expenses of their man, McDonald, who was delayed in his work by such breakage.

"That Charles McDonald, the machinist sent by Mr. Allis to erect this machinery, had no authority to modify or alter this contract between Allis and the defendants by taking charge of the teaming, or otherwise interfering with it, and neither Mr. Allis nor his personal representatives, the plaintiffs, are bound by such alteration or modification. In other words, the fact that Mr. McDonald directed or advised Mr. Davis as to where he desired this wheel to be unloaded, and which side up it should be placed when unloaded, would not make the plaintiffs liable for the loss resulting from the breakage of the wheel while Mr. Davis was unloading the same."

The plaintiffs' testimony showed that Davis, in carrying the wheel from the depot to the mill, acted under the direction of Mr. McDonald. Whether McDonald was acting within the scope of his employment or not in directing the moving of the wheel, the court was in error in directing the verdict. It is conceded that the title of the wheel was yet in the plaintiffs' testator at the time it was broken. The defendants were not common carriers; and, though they might be held liable for their own negligence or the negligence of their employés, yet the court did not consider that view of the case, or submit that question to the jury, if there was any evidence to go to the jury upon that subject. The court evidently considered the defendants liable under their contract to deliver, and construed the contract as claimed by the plaintiffs,—that they were safely to deliver, and were therefore insurers. Construing the contract as contended for by plaintiffs' counsel,—that the defendants were safely to deliver,—yet, under the circumstances here stated, they were not insurers of the property, so that, if by mere accident the machinery was broken, they could be held liable. The court was therefore in error in not giving the defendants' sixth request.

Referring to the contract, we are not satisfied with the construction given it by plaintiffs' counsel, and accepted by the court below. The language employed shows that the defendants were to do all the teaming required. It will not do to say that Mr. McDonald, when sent by the plaintiffs' testator to Grand Rapids to erect this machinery in the mill, had nothing to do about looking after its removal from the depot to the mill. When he arrived there the machinery was yet at the depot. He inquired where it was, and then required the defendants to procure the necessary teams and men to remove it. He took charge of the moving; and Mr. Davis testifies he acted entirely under the direction of McDonald in the manner of loading, and McDonald selected the place of unloading. The defendants were not present, and had no supervision over it. McDonald assumed the whole charge of it. McDonald testifies, however, that his instructions from the plaintiffs' testator were to supervise the putting up of the machinery in the mill, and that the defendants were to do the teaming; that plaintiffs' testator had nothing to do with that. On arriving at Grand Rapids, he saw Mr. Voigt, and told him he had come to put up the machinery. The question was asked him by plaintiffs' counsel:

" *Q*. What was it you told him you had come over to do?
" *A*. I told him I came over to set up his engine for him."

This was all that McDonald, in his testimony, claims to have stated to the defendants as to his authority from plaintiffs' testator. The defendants evidently regarded the contract as one by which they should do the teamwork, as required; that is, they should furnish the teams and men required to move the machinery from the depot to the mill. The machinery, by the terms of the con-

tract, was to be furnished by the plaintiffs' testator to defendants and erected in the Crescent Mills, without expense to defendants,—

"Except that you shall do all teaming required in Grand Rapids, and furnish all mason and carpenter work."

We think the intention of the parties was that the plaintiffs' testator was to supervise the whole matter. He shipped the machinery to Milwaukee, was to pay the freightage to Grand Rapids, and to be to all other expense except the teaming and mason and carpenter work. Any breakage on the way from Milwaukee to Grand Rapids would have been his loss. If he had intended to charge the defendants with safely carrying the machinery from the depot to the mill, it could have been easily expressed in the contract, but it was not; and we think that any such construction would be interpolating words into it not expressed in it, or there by implication. The defendants were mill men, and not engaged in teaming. It was evidently thought by the parties that the defendants, being residents of Grand Rapids, could more readily find the teams and men to do the moving, mason and carpenter work, than the plaintiffs' testator, and that therefore, when required to do so, they were to furnish these men and teams. This being the true interpretation of the contract, the court was in error in refusing to give defendants' second and third requests.

Mr. McDonald, as the agent of the plaintiffs' testator, had a right to require of the defendants, under the contract, that they furnish the teams to do the moving. He made this request, and himself took charge of the moving, according to the testimony of Mr. Davis. The defendants' fourth and fifth requests should therefore have been given.

It is claimed, however, that Mr. McDonald received some private instructions from Mr. Allis, the plaintiffs' testator, by which his agency was limited to the actual erection of the machinery in the mill, and that when he took charge of the moving he was acting outside the scope of his agency. The plaintiffs' testator, having made him his general agent to carry out the terms of the contract, could not limit his authority within the scope of the business by private instructions not known to the defendants. *Hutchings v. Ladd*, 16 Mich. 493; *Inglish v. Ayer*, 79 Id. 516.

As has been stated, the defendants themselves were not common carriers; and, being special carriers only, they could not, even upon the construction of the contract as contended by plaintiffs' counsel, be held liable except for negligence. They were bound to use ordinary care only. This question was settled when the case was presented to this Court as reported in 83 Mich. 537. This doctrine is upheld in the following cases cited in brief of defendants' counsel: *Shelden v. Robinson*, 7 N. H. 157;———*v. Jackson*, 1 Hayw. (N. C.) 14; *Brind v. Dale*, 8 Car. & P. 207; *Pennewill v. Cullen*, 5 Har. (Del.) 238; *Samms v. Stewart*, 20 Ohio, 69; *Shaw v. Davis*, 7 Mich. 318; *Pike v. Nash*, *40 N. Y. (1 Keyes) 335; *Allen v. Sackrider*, 37 N. Y. 341; *Fish v. Clark*, 49 Id. 122; *The Dan*, 40 Fed. Rep. 691.

The court was therefore in error in taking the case from the jury. It was a question for the determination of the jury—

1. Whether the defendants employed the men to do the moving, and whether they were acting as the agents of defendants at that time; and, if so, whether by their negligence and carelessness the wheel was broken.

2. If the wheel was broken by the carelessness and negligence of these men, whether they were acting under the

direction of McDonald, or under the direction of the defendants.

As was stated in the other case, if the defendants employed the men and directed the moving, and while acting under such employment the men, by their carelessness and negligence, broke the wheel, the defendants would be liable. If, however, the men were acting, as claimed by Davis, entirely under the direction of McDonald, the defendants could not be held liable for the breakage, as McDonald was acting for the plaintiffs' testator, and, as we think, within the scope of his agency under the contract. If the breakage was a mere accident, and not caused by the carelessness of the men moving the wheel, then the defendants would not be liable, as they were not common carriers, and were bound to exercise ordinary care only.

Some question is raised as to the question of damages, as fixed by the court under the testimony given. In view of what has been said, we need not discuss that.

The judgment must be reversed, with costs, and new trial ordered.

The other Justices concurred