SUPERIOR DRILL CO. *v.* CARPENTER.

1. EVIDENCE—WRITTEN CONTRACTS—PAROL EVIDENCE—ADMISSI-
BILITY.

A contract of agency for the sale of agricultural machinery
provided that the principal would accept without indorse-
ment good farmers' notes taken for the principal's machin-
ery. Defendant agent transferred to plaintiff principal notes
taken in his other business which were not paid, and on
learning of their origin plaintiff refused to accept them and
brought suit for the balance represented by them. *Held*, that
evidence that plaintiff's State agent had in former years un-
der similar contracts taken notes not given for plaintiff's ma-
chinery was admissible, not as contradicting the terms of·
the written contract, but as bearing upon the question of the
authority of the general agent to accept that kind of notes,
and as bearing upon the truth of his statements as a witness.

2. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—STATEMENTS OF
AGENT—RES GESTÆ—ADMISSIBILITY.

The extent of the authority of plaintiff's agent cannot be
proved by his own declarations though made as a part of the
transaction on which plaintiff relies to maintain his suit.

3. SAME—GENERAL AGENT—AUTHORITY—EVIDENCE—SUFFICIENCY.

On the issue whether plaintiff's State agent was a general
agent with power to settle generally and close up transac-
tions in such a way as he deemed best for plaintiff, even to
accepting settlements upon different terms from those pro-
vided by contract, evidence examined, and *held*, sufficient to
go to the jury upon that question.

4. SAME—RATIFICATION—EVIDENCE—SUFFICIENCY.

*Held*, that if it was necessary to bring home to any one other
than plaintiff's State agent knowledge of a previous settle-
ment made by him with defendant, the evidence failed to
show any such information conveyed to plaintiff's home office
as would justify an instruction on the presumption of ratifi-
cation arising from knowledge.

5. EVIDENCE—WRITTEN CONTRACTS—PAROL EVIDENCE—ADMISSI-
BILITY.

Defendant was allowed to testify that when signing the con-
tract he asked why the words regarding taking notes were

there, and was told by the agent that the company would always take notes for their drills, that he would be present personally to make settlement and would take notes for other drills rated good if taken on their blanks. *Held*, that the testimony was inadmissible as an attempt to vary the terms of a written contract by parol.

Error to Ionia; Davis, J. Submitted June 20, 1907. (Docket No. 56.) Decided December 10, 1907.

Assumpsit by the Superior Drill Company against Claude B. Carpenter and George H. Carpenter for goods sold and delivered. There was judgment for defendants, and plaintiff brings error. Reversed.

*H. J. Horrigan* and *R. A. & W. E. Hawley*, for appellant.

*R. A. Colwell* and *A. A. Ellis*, for appellees.

MONTGOMERY, J. This action is brought to recover a balance of $120 claimed to be due from defendants to the plaintiff on account of agricultural implements sold and delivered to the defendants in the year 1901 under a contract dated March 9th of that year. It is conceded that this sum is due plaintiff from defendants unless by a settlement two notes made by one H. T. Berndt in the sum of $60 each and payable to the plaintiff should be credited to defendants, in which case the account stands balanced.

The defendants were by the contract of 1901 constituted plaintiff's agents to represent them in certain territory. On the first page of the cover of the contract appeared the following statement:

"This contract is subject to the approval of the Superior Drill Co., and contains the full and entire agreement between the parties hereto and no outside verbal understanding is of any force or effect whatever. Settlement will be required in accordance with this contract."

The contract provided terms of payment, and in writing on the margin appeared these words:

"Good farmers' notes taken for sale of Superior Drills and approved by first party and local banks at the time of settlement to be accepted without indorsement."

Then follow other statements, concluding with this:

"This paper contains the full and entire agreement between the parties hereto, and no outside verbal understanding is of any force or effect whatever."

At the time of these transactions W. W. Miller was the general State agent of the plaintiff, and, as he testified, had charge of the Michigan business of the Superior Drill Company. He testified that he constituted and appointed defendants his local agents; that he settled with them under the contract of 1901, receiving the two Berndt notes in question. That at the time he received these notes he had not received any information from the defendants that the Berndt notes or any other accepted by him were given by the maker for any other goods or property than those manufactured and furnished to defendants by the plaintiff. The statement of this witness that he had no knowledge that defendants were turning out other notes than those received in payment of goods sold to defendants by plaintiff is disputed by defendants' testimony.

The Berndt notes were not paid at maturity, and subsequently P. A. Miller, a traveling agent for the company, went to Lake Odessa, where defendants reside, and asked about the maker. At that time he did not have the notes in his possession but was told by defendants that they thought the notes would be paid. Several weeks later he again went to Lake Odessa and later on called up defendants by telephone, and finally in July or August, 1903, went to Lake Odessa and saw Berndt. He was informed by Berndt that the notes were not given for goods or machinery of plaintiff but were given in a horse trade made with defendants. He returned to Lake Odessa and told defendants what he had learned from Mr. Berndt, and it is claimed that this was the first information that the company or any of its agents had that the notes were not taken for any of the goods sold by plaintiff to defendants.

Defendants however claim that there was information in the transaction itself by reason of the fact that more notes were turned over to the agent, Miller, in the settlement of the 1901 deal than the number of drills which were sold would amount to, and further, that from the course of dealing in previous years the plaintiff's agent, Miller, knew that notes not taken for goods sold by plaintiff had been tendered and received.

On the occasion in August, 1903, Miller left the Berndt notes with one of the defendants and took his receipt. The notes were not paid, and in February, 1904, the plaintiff sent these notes to Henry J. Horrigan, its attorney at Ionia, Michigan, who on the 15th of February, 1904, wrote defendants stating that the notes had been received with the understanding that they were given for machinery of plaintiff's sold by defendants, and that plaintiff ascertained some time later that these notes were not given in payment for goods but taken in a horse trade, and that plaintiff declined to accept the notes. In July, 1904, no adjustment having been made, these notes were tendered back to defendants and left with them and still remain in their possession.

The verdict was in favor of the defendants. Plaintiff brings error. The errors assigned relate to the admission of testimony and the charge of the court. Evidence was offered by defendants tending to show that under contracts containing the like provision as that in the contract of 1901 the plaintiff had on previous occasions (in previous years) settled with defendants taking farmers' notes not given for goods of plaintiff sold by defendants. This was objected to but received, and afterwards a motion was made to strike it out. We think this testimony was admissible, not for the purpose of contradicting the terms of the contract, but as bearing upon the question of the authority of the general agent, W. W. Miller, to accept this kind of notes, and as bearing likewise upon the question of the truthfulness of his statements. It is true this testimony was received before Miller's deposition was in-

troduced, but as the deposition later made it competent for this purpose no prejudicial error would have resulted from its admission on that ground.

Subject to objection and exception, defendant Claude Carpenter was permitted to testify to statements of Miller to the effect that he had authority to accept notes of the character in question. At the close of the case, an instruction was requested that statements of Miller as to the extent of his authority should be stricken from the evidence, on the ground that an agent's authority cannot be proved by his statements made outside of court. The court admitted this testimony as part of the res gestæ, presumably on the authority of *Haughton* v. *Maurer*, 55 Mich. 323. We are disposed to think that the doctrine of that case has been misunderstood. The statement is made in the headnote that,—

"Declarations by a person claiming to be an agent, and constituting a part of his transactions as such, may be shown as res gestæ on the question of his authority."

What was said by the court in the case was:

"We have found no evidence admitted as to declarations of Hamilton which did not form part of transactions which he was assuming to conduct as agent. *If he had authority* they were therefore admissible as res gestæ."

This is quite a different thing from saying that such declarations are admissible for the purpose of proving his authority. The exact reverse is implied by the decision, viz., that before his declarations are admissible as a part of the res gestæ, his authority should be proven; and it would follow that upon the question of authority they are not admissible. The rule is settled that the authority of an agent cannot be proven by his own declarations. *Three Rivers Nat. Bank* v. *Gilchrist*, 83 Mich. 253; *Hatch* v. *Squires*, 11 Mich. 185; *Gore* v. *Assurance Co.*, 119 Mich. 136; Mechem on Agency, § 276.

The case was submitted to the jury upon a charge which in the main fairly presents the issues. It was sub-

mitted to the jury to determine as to whether the State agent, W. W. Miller, was a general agent with power to settle generally and close up transactions in such way as he deemed best for the interests of the company. It is contended on the part of the plaintiff that there was no evidence tending to show this authority, and on the part of the defendants it is contended that such authority was conclusively shown. We think the circuit judge properly submitted this question to the jury. Mr. Miller himself testified that he was the general agent representing the company in this State. But the record is silent as to whether that agency included the extraordinary power of accepting a settlement upon different terms from what the contract provided. It was open to inference by the jury that he did have such authority, and if he possessed that authority the case was fully within *Inglish* v. *Ayer*, 79 Mich. 516. The doubt we have had is as to whether the inference should not have been drawn as a matter of law. But we incline to the view that the correct result was reached.

The court, in instructing the jury as to what would amount to ratification by the company, instructed them in effect that if the company permitted a general agent to make settlements in which it was agreed to take farmers' notes without reference to whether they were taken for the company's drills or not, he would have authority to do so in this instance. Defendants asked the court to charge the jury that there was no testimony tending to show that plaintiff was ever informed that the notes received by Miller on settlement of the contract of 1899 were not given for the sale of its goods. The court, in refusing this request, charged the jury that they must be satisfied that plaintiff either had a direct knowledge of the facts as to these notes they had so accepted and acted upon and collected, or that they had such control of those matters as would lead an ordinarily reasonable man to the conclusion that they ought to have been informed as to the condition from the fact that they collected them, sent them

back to their agents for the banks, or that they collected them from the parties who gave them, and that all of those things might be considered as bearing upon whether they did have any knowledge of the transaction. If it was necessary to bring home to any one other than Miller the knowledge of the settlement in 1899, the evidence failed to show any such information conveyed to the plaintiff's home office in Ohio as would justify this instruction.

We think the other questions presented are not likely to arise upon another trial. As there must be a new trial there is one question not distinctly raised by the assignments of error which should be noticed. One of the defendants was permitted to testify that, when signing the contract with the company with the provision relating to the taking of farmers' notes received on sale of drills, he asked Miller why he wanted those words in the contract, and was permitted to testify that Miller stated that the company would always accept notes taken for their drills and that he would be present personally to make settlement and would take notes for other drills rated good if taken on their blanks. This was clearly an attempt by parol to vary the terms of a written contract. It may be said that this testimony did not refer to the particular contract in issue, but the obvious purpose was to show that the provisions of the contract as written meant something quite different from what their terms imported.

For the error pointed out the judgment will be reversed, and a new trial ordered.

BLAIR, OSTRANDER, and MOORE, JJ., concurred. HOOKER, J., concurred in the result.