ACORN REFINING CO. v. KNOWLSON.

1. PRINCIPAL AND AGENT—SALES—AUTHORITY OF AGENT.

In an action for goods sold and delivered, where the bargain was made, and the goods received, during defendant's absence, by an agent who had authority to buy *some* goods, the. question whether the agent was acting within his authority was for the jury.

2. SAME—RATIFICATION.

Where the agent informed defendant that the goods were consigned upon special agreement, but the order signed was unconditional, and the agent, with defendant's consent, paid out defendant's money for apparatus the agent claimed plaintiff was to furnish, the question whether defendant ratified his agent's action was for the jury.

3. SAME—AGENT'S AUTHORITY.

A party dealing with an agent is bound to inquire into the extent of his authority, ignorance of which is no excuse, but, having ascertained the general character or scope of the agency, he is authorized to rely upon the agent's having such powers as naturally and properly belong to such character, and, in the absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations of the apparent powers of the agent.

4. SAME—INSTRUCTIONS—AGENT'S AUTHORITY.

Instructions to the jury so confusing and misleading as to leave in doubt the rule to be applied in determining the agent's authority to bind defendant, *held* to be erroneous.

5. SAME — HOLDING OUT BY PRINCIPAL — AGENT'S AUTHORITY — EVIDENCE.

Where there is no testimony that plaintiff or its salesman had any knowledge concerning the apparent authority of defendant's agent beyond the agent's own action and statements, and the salesman did not ascertain or inquire about the general character or scope of the agency, but acted upon the assumption that because he was willing to do business he had authority to do it, plaintiff was in no position to rely upon any holding out of the agent by defendant, since one is not affected by facts of which he has no knowledge.

6. SAME.

However, it was proper for plaintiff to prove the scope of the agent's authority, and to show that it extended far enough to authorize him to purchase a line of goods not before carried by defendant.

7. SAME—TRIAL—SPECULATION BY JURY—INSTRUCTIONS.

Where the agent was not left in full charge of the business it was erroneous for the court to allow the jury to speculate upon the question whether the particular goods, a new line, "would be handled by that kind of a concern," "whether it was a kindred business" such as defendant would expect an agent to take on, and whether "he would have authority to use his best judgment" in taking it on, in the face of undisputed testimony stating the limits of the agent's general authority.

8. SAME—RATIFICATION—INSTRUCTIONS—TRIAL—SALES.

Where defendant's agent informed him that the sale was conditional, and plaintiff claimed that it was absolute, knowledge of correspondence between the parties in which the respective claims were made, and failure to immediately repudiate the transaction would not amount to ratification, as defendant might be excused for assuming that the dispute would be settled agreeably with the agent's contention.

9. SAME.

Instructions by the court that notice to the agent was

notice to the principal, and that the correspondence, being carried on by express authority of defendant, would be such notice as to amount to ratification if he received the benefits of an unauthorized agreement, was erroneous, as defendant might have been willing to ratify a conditional sale but not an unconditional one.

10. SAME—CONSTRUCTIVE NOTICE—UNAUTHORIZED ACTS.
A principal is not chargeable with constructive notice of unauthorized acts of his agent.

Error to Kent; Brown, J. Submitted June 9, 1915. (Docket No. 23.) Decided September 28, 1915.

Assumpsit in justice's court by the Acorn Refining Company against Abram B. Knowlson for goods sold and delivered. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Reversed.

*Holmes & Holmes* and *Don E. Minor,* for appellant.

*Hatch, McAllister & Raymond,* for appellee.

OSTRANDER, J. The action is brought to recover the price and value of goods sold and delivered. The principal issues made were, *first,* whether defendant's agent, between whom and an agent of plaintiff the bargain was made, was acting within his authority; *second,* whether the defendant, whatever his agent's authority may have been, ratified the agent's action and agreement. A third issue was tendered by defendant, which was that defendant's agent was by fraud, practiced by plaintiff's agent, induced to make a bargain. Suit was begun in justice's court, where the pleadings were oral, and plaintiff recovered.

Whatever the bargain was, it was made and the goods were received during a period when for several weeks defendant was absent. During his absence his business went on. Mr. Abram B. Horner, an employee, attended to the correspondence, and had authority to

buy *some* goods. Defendant returned the last of June, and was informed by Horner about the particular transaction; but defendant says his agent told him the goods were consigned upon a special agreement, the terms of which he stated.

The order for the goods, dated May 19, 1911, signed "A. B. Knowlson, per A. B. Horner," is unconditional. The invoice indicated an unconditional sale. Correspondence followed the receipt of the goods conducted for defendant by Horner. Horner paid out some of defendant's money to supply apparatus which he claimed plaintiff was to furnish, which purchases for its account plaintiff, in a letter, approved. It was when plaintiff demanded pay that Horner, using defendant's name, wrote it that the goods were consigned, to be paid for when sold and money for sales collected.

The controlling issues are really very narrow. The order for the goods, upon which plaintiff acted, contains the following:

"This order is placed with the understanding that it is positive, and not subject to change or countermand unless so specified hereon. Any agreement not stated on this order will not be recognized."

If defendant had given it, and had thereafter received and accepted the goods, there would be no question about his liability to pay for them. Plaintiff had notice that defendant's agent gave the order. If the agent had authority to purchase the goods, if he was held out by his principal as having such authority, or if the principal, the defendant, ratified his action, defendant's liability would be clear. Plaintiff undertook to prove both authority and ratification. Upon neither point is the testimony conclusive; but there is sufficient, in my opinion, to warrant submitting these questions to a jury. This the court did, but in a manner criticized by defendant's counsel. Rulings admitting and rejecting testimony are also complained about, and

it is assigned as error that the court withdrew from the jury the question of fraud in procuring the contract.

We said, through Mr. Justice BLAIR:

"Defendant's counsel contends that a party dealing with an agent is bound to inquire into the extent of his authority, ignorance of which is no excuse. This is undoubtedly a correct statement of a general principle of the law of agency, but this rule is not to be applied without qualifications and under all circumstances. It is equally well settled that, having ascertained the general character or scope of the agency, the party is authorized to rely upon the agent's having such powers as naturally and properly belong to such character, and, in the absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations of the apparent powers of the agent." *Grand Rapids Elec. Co.* v. *Manfg. Co.*, 142 Mich. 4, 9 (105 N. W. 1), citing *Inglish* v. *Ayer*, 79 Mich. 516 (44 N. W. 942); *Allis* v. *Voigt*, 90 Mich. 125 (51 N. W. 190); *Austrian & Co.* v. *Springer*, 94 Mich. 343 (54 N. W. 50, 34 Am. St. Rep. 350).

The errors assigned upon the charge are best understood by setting out some parts of it:

"A good deal has been said in this case on the subject of the authority of an agent, the subject of apparent authority and real authority. You will find in some instances that the court holds, and it is the law as pertaining to the facts in this case, that apparent authority, that which seems to be obvious or evident from the relation of the clerk to the business of the principal, that if he holds himself out and seems to be in a position of having apparent authority to do what he is trying to do and does do, that the principal is bound by that authority. On the other hand, you will find decisions that hold that a person dealing with an agent does so at his peril and that he must inquire and must learn the extent of the agency, and the right of the agent to make the purchase in order to bind the defendant.

"Now under proper circumstances the apparent authority binds the principal under some conditions. On

the other hand, there are cases that the deal is absolutely at the peril of the person negotiating the deal with the agent, and it is the facts and circumstances in the case that give application to those rules of law. And in this case, when you are determining the question of agency of Mr. Horner, you will consider the nature of the business, you will consider his agency there, and take all the testimony in the case, that of Mr. Knowlson, whatever you find that he did from the testimony here, whatever admissions he may have made; and on that subject the statements or claims of Mr. Horner as to what his authority was, of course, are not admissible, because the agent cannot by his declaration bind his principal, but the fact of his occupancy there, his labor there, what he had to do there, from the nature of his employment there, all those things may be taken into consideration by you as to whether or not he had the authority to negotiate this deal. The apparent authority, the fact that the defendant in this case had gone away for some considerable length of time and left this man there in charge of the business, with authority to buy certain kinds of goods, the fact as to whether or not these goods bought were goods that came in in the regular course of business and would be handled in that kind of a concern, whether it was a kindred business, such a business as Mr. Knowlson himself would expect an agent to take on, and there would be an implied understanding between them, if not an express understanding, that in anything like this he would have authority to use his best judgment in indorsing it and taking it on. All the facts and circumstances in this case you will consider as bearing on the agency or the right of Horner to make this contract in the name of this defendant, so as to bind him, and that, of course, that agency or that right, must appear from the testimony which preponderates in favor of the plaintiff, as I have stated on opening this case to you."

The jury was further instructed:

"In this case the plaintiff claims to have entered into the agreement with the defendant through one Mr. Horner, acting for and in behalf of the defendant. Upon this point I charge you that one claiming to deal with and through an agent is bound to ascertain the

authority of the agent to bind his principal in any given transaction. In other words, he deals with the agent at his peril, and the burden rests with the plaintiff to show that the agent had authority to bind his principal in the matter. And, applied in this case, I charge you that the burden is upon the plaintiff to show by a preponderance of the evidence that Mr. Horner, with whom the contract was negotiated, had authority from the defendant, Mr. Knowlson, to enter into such a contract as plaintiff claims was entered into in this case for and in behalf of the defendant.   *   *   *

"Upon the question of the authority of an agent in the given case, I charge you that agents may have as much or as little power as their principals see fit to give them, and one dealing with an agent is bound to inquire into the extent of his authority, and a person who deals with another supposing him to be the agent is not protected by the other's assumption to act.

"I further charge you that the statement of conclusions of the agent that he has the authority to act in a given case are not sufficient to prove authority, and such declaration is not binding upon his principal.   *   *   *

"A definition as to the agency of one person by another may be stated as follows: It is a contract, either expressed or implied, by which one of the parties confides to the other the management of some business to be transacted in his name or on his account, by which the other assumes to do the business and surrender an account of the business done. And on the question of agency it is said that where a person is sought to be charged for the acts of another, and there is evidence of an apparent authority, the question to be determined is, not what power was intended to be given to the agent, but what power a third person dealing with him had the right to infer from his own acts and those of his principal that he possessed."

Before these instructions were given, the court had advised the jury upon the same general subject in the following language:

"On the question of implied authority I charge you as a matter of law that the authority of an agent need not be expressly conferred, but may exist by implica-

tion from the general authority conferred by the principal, and I charge you that, if it appears from the evidence in this case that Mr. Horner had such general authority during the absence of Mr. Knowlson as would reasonably include such a purchase as has been made in this case, then Mr. Knowlson cannot deny the agency, and is bound by the acts of Mr. Horner. In other words, the relation of principal and agent does not entirely depend upon the express appointment; but it may be implied from the works and conduct of the parties under the circumstances in the case. You will therefore take into consideration all the facts and circumstances in this case, and if you find that from the express authority conferred upon Mr. Horner by Mr. Knowlson an implied authority to purchase the goods in question could reasonably be inferred, then your verdict should be for the plaintiff. It is an established rule that, when a principal by any such acts or conduct has knowingly caused or permitted another to appear to be his agent, either generally or for a particular purpose, he will be estopped to deny such agency to the injury of third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent on the faith of such appearance. This rule is particularly true if the principal has by act and conduct recognized such agency through a long course of dealings, or through many transactions. It is also stated in the decision of our Supreme Court, 142 Mich. 9 [105 N. W. 1], that it is equally well settled that having dealing, the general character or scope of the agency, the party is authorized to rely upon the agent having such powers as naturally and properly belong to such character, and in the absence of circumstances putting him upon inquiry he is not bound to inquire for secret qualifications or limitations of the apparent powers of the agent. It is the law that, even where there is no agency, either expressed or implied of an agency by reason of apparent authority, holding out, or estoppel, still the principal may be bound by the acts of his agent by virtue of subsequent ratification of the agent's unauthorized acts. The authority of the agent on this branch of the matter is not dependent upon any authority, express or implied, conferred by the principal, but depends

upon the knowledge and acts of the principal subsequent to the acts of the agent."

While the range which the testimony was permitted to take and the contentions of counsel may have been in part responsible for the form of the charge, I am impressed that, as is claimed by appellant, it was confusing and probably misleading. Reading it leaves one in doubt about the rule given for determining whether defendant was to be held bound by his agent's act.

There is no testimony tending to prove that plaintiff or its agent and salesman had any knowledge or information concerning the apparent authority of defendant's agent Horner before making the bargain, beyond the immediate action and statements of Horner himself at the time the sale is claimed to have been made. In his deposition the salesman says he called at defendant's place of business and met and talked with Mr. Horner, "who is buyer for Mr. Knowlson, relative to the purchase of paint from my employers." It does not appear that he knew that Knowlson was absent, that he had ever done any business with Horner before, that he knew that Horner ever purchased goods for defendant, or that he made any inquiry concerning the authority he possessed. He did not ascertain or inquire about the general character or scope of Horner's agency. He acted, apparently, wholly upon the assumption that, because he was willing to do business with him, he had authority to do it. This being so, plaintiff was in no position to rely upon any holding out of Horner by defendant as his agent for the purpose of buying goods, since one is not affected by facts of which he has no knowledge. It was, of course, proper for plaintiff to prove the scope of Horner's agency, and, if he could do so, to show that it extended so far as to authorize him to purchase, as

in this case, a line of goods not before carried by defendant.

It is undisputed that Horner was not left in full charge of the business; the bookkeeping and financial part of it being in charge of another. But to leave it to a jury to speculate upon the question of whether the particular goods "would be handled in that kind of a concern, whether it was a kindred business, such a business as Mr. Knowlson himself would expect an agent to take on, and there would be an implied understanding between them, if not an express understanding, that in anything like this he would have authority to use his best judgment in indorsing it and taking it on," is rather dangerous, in the face of undisputed testimony stating the limits of the agent's actual authority.

Again, upon the subject of ratification by defendant of what Horner had done, the court said:

"While it is true that in the present case Mr. Knowlson claims that he had no knowledge of the correspondence had between the plaintiff and himself until a week or two after October 1, 1911, yet it is the law that notice to the agent is notice to the principal, and inasmuch as it appears from the undisputed evidence in the case that Mr. Horner was carrying on the correspondence in question under the express authority and direction of Mr. Knowlson, Mr. Knowlson would be chargeable with notice of all the facts and circumstances contained in the correspondence.

"In other words, it is the law that, where such constructive notice exists, the party who receives such notice is held to have ratified the acts of the assumed agent. I will repeat that. In other words, it is the law that such notice constitutes constructive notice to him, and where such constructive notice exists the party who receives such notice is held to have ratified the acts of an assumed agent. You are instructed that a principal who, with full knowledge of all the material facts affecting his rights, received the benefit of an unauthorized agreement made by one purporting

to be his agent, is precluded thereby from questioning the agent's authority in the transaction."

If the jury believed defendant, who testified as a witness, they would have found that he (defendant) was informed by his agent (Horner) that the goods had been sold to him conditionally, the conditions being stated, and did not know that Horner had assumed to buy them, or to give, in his name, or otherwise, an unconditional order for them. It appears that Horner was claiming in the correspondence with plaintiff upon the subject that such was the arrangement. Assuming that defendant was chargeable with notice of plaintiff's claim in that behalf, as shown by the correspondence, and with notice that his agent (Horner) was disputing the claim, he might be excused for assuming that the dispute would be settled agreeably with his agent's contention. He might be excused from immediately saying, in effect:

"If you claim it was a sale, my agent had no authority to purchase."

Believing this testimony, they could not have properly found that he ratified an unconditional purchase of the goods. He might have been willing to ratify a conditional purchase, made by Horner in excess of his authority, and unwilling to ratify an unconditional purchase. In any view of the matter, it is not apparent in what manner the charge last above referred to could have aided the jury. If by it was meant that a principal is chargeable with constructive notice of the unauthorized acts of his agent, it was erroneous. If that was the law, it would be impossible for a principal to escape responsibility for any unauthorized act of his agent.

The question of fraud was properly withdrawn from the jury. Defendant's agent did, or did not, with authority, purchase the goods unconditionally. If he had authority, express or implied, that is sufficient, and

the case is as if defendant had himself given the order. If he had no authority to make the purchase, defendant, with knowledge of the actual transaction, did, or did not, ratify the transaction.

These were the issues properly raised by the testimony and they were not, in my judgment, submitted to the jury with proper instructions. It does not seem likely that the questions raised upon rulings admitting and rejecting testimony will be troublesome upon a new trial of the actual issues. It is clear, however, that such sales of the goods as were made according to the theory and belief that they were consigned for sale, and such, if any, as were made by agreement of counsel, do not tend to prove ratification by defendant of an unconditional purchase by defendant's agent.

The judgment we feel compelled to reverse, and order a new trial. .

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.