## JOHN A. CRAIN *et al.*

*v.*

## THE FIRST NATIONAL BANK OF JACKSONVILLE.

*Filed at Springfield September 23, 1885.*

1. BANK OFFICERS—AGENCY—EVIDENCE—*question of authority of a cashier to bind the bank—custom of banks to borrow money.* In a suit against a firm of private bankers, upon a note given by their clerk and cashier for money borrowed by him in the firm name and appropriated to his own use, in which the cashier's authority to give the note is put in issue, evidence of the custom of bankers at the place in which the defendants' bank was located, to borrow money on time, is proper, as tending to show that the borrowing of money was within the scope of the ordinary and customary business of the defendants.

2. SAME—*a paper given to a third party containing the signatures of those authorized to bind the defendant bank—as evidence of their authority.* In the same suit it was *held,* a paper, directed to another and distant bank, giving the signatures of persons authorized to sign for the defendants, one of which was in the hand-writing of the cashier and another that of one of the defendants, was proper evidence as an admission of the defendant signing the same, of the cashier's authority to bind the defendants by the execution of a note in their firm name. And the fact that the payee of the note did not act on the faith of such paper, though detracting from its weight, did not render it irrelevant and improper.

3. SAME—*as to prior fraudulent acts of cashier with others.* In a suit upon such a note, proof of other fraudulent drafts drawn by the cashier upon other banks is not admissible, without any attempt to show knowledge of such drafts by the payee before making the loan to the cashier.

4. SAME—*giving of notes belonging to the bank as collateral for the cashier's loan, whether notice of cashier's want of authority in the particular transaction.* The giving as collateral security, by a cashier of a private bank, notes of other persons, of over $5000, of his bank, to secure a note of that amount given by him in the name of his principals, with authority, on maturity of the latter note, to sell the collaterals at public or private sale, with or without notice, and apply the proceeds to the payment of the note given, is not of such a nature as to afford notice to the party making the loan and taking the notes, of the cashier's want of authority to execute the note for the bank, or of fraud in giving it.

5. SAME—*as to general operations of the bank, and the cashier's connection with them, as showing his authority—an instruction on that question.* In a suit by A against C & D, private bankers, upon a note given by

the cashier of the bank in the firm name of the defendants, in which the cashier's authority was put in issue, the court instructed the jury, that if they believed, from the evidence, that the defendants were bankers at W., and that the person making the note was their cashier, and intrusted by them with the general management of their bank and the power to carry on all their general banking operations, and that it was one of the usual operations of a bank at W. and its vicinity to borrow money on time and execute a note therefor, and that such person, while acting as cashier and manager for the defendants, borrowed in their name, of the plaintiff, $5000, and thereupon executed and delivered to the plaintiff the note sued on, they should find for the plaintiff: *Held,* that the instruction was properly given, and that it was not faulty in not defining the meaning of "general manager," or what constituted general management, or in ignoring the question of notice of the agent's want of authority, when there was no sufficient evidence of such notice.

6.   SAME—*holding out agent as having authority to act.*   On an issue as to an agent's authority to borrow money, and give a note therefor, in the name of his principal, the court modified an instruction of defendant, that when an agent acts beyond his authority the principal is not bound, unless he had held out to the party dealt with, the agent as having authority to do the act, by adding after the words "dealt with," and before the words "the agent," the words, "or to the public generally:" *Held,* that there was no error in the modification.

7.   GENERAL AGENT—*what constitutes.*   Power to act generally in a particular business, or a particular course of trade in a business, however limited, constitutes a general agency, if the agent is so held out to the world, however restricted his private instructions may be.

8.   ACTION—*as to principal debt—effect of being secured by collaterals.* The fact that payment of a promissory note is secured by collaterals, does not affect the right of recovery in an action on the note.

9.   INSTRUCTION—*singling out a particular fact.*   In a suit upon a note given by an agent, the court was asked to instruct the jury that the fact that defendants authorized the agent to sign their firm name to notes, to a certain firm named, or to others, did not of itself authorize him to sign their name to the note sued on,—which was refused: *Held,* that the instruction was bad in singling out a particular fact, and telling the jury that such, alone, would not warrant a recovery.

10.   ERROR—*when obviated by the answer to the question ruled out.*   The refusal of a proper question can not be assigned as error when the witness, notwithstanding the ruling of the court, substantially answers the same.

11.   ERROR WILL NOT ALWAYS REVERSE—*refusal of instruction.*   The refusal of a proper instruction in respect to certain evidence will not be such material error as to require a reversal, when, from all the evidence, the finding must have been the same had it been given.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON & WHITLOCK, for the appellants:

A general agent is one who is authorized by his principal to take charge of his business in a particular line. Wharton on Agency, sec. 117; *Doan* v. *Duncan*, 17 Ill. 272; 18 id. 96; *Potter* v. *Dennison*, 5 Gilm. 590.

Over the objection of appellants, both Mr. Ayers and Mr. Farrell were permitted to prove the custom of banks, in Waverly, to borrow money on time. We insist this was not material, and at the same time it was calculated to mislead. The court made it the basis of instruction. It was not a question whether banks were accustomed to borrow money on time, but whether clerks in like situations were, by custom, authorized to negotiate loans of the character in question, and to bind their employers by promissory notes,—and nothing of the kind appeared.

The plaintiff introduced a paper, as follows: "Herewith please find signatures of persons authorized to sign for Crain & Manson,"—with the firm name written three times, one of which was in the hand-writing of W. O. Manson. This not being addressed to plaintiff, and not acted on by it, was improperly admitted, or if admitted, should have been controlled by instructions.

The facts and circumstances were such as to put the plaintiff upon its guard, and require its officers to investigate the agent's authority. *Potter* v. *Dennison*, 5 Gilm. 590.

As to what will amount to a notice, see *Rodrigues* v. *Heffernan*, 5 Johns. Ch. 417.

Notice to the cashier of a bank is notice to the bank. *Loring* v. *Brodie*, 134 Mass. 453; *Exchange Nat. Bank* v. *Third Nat. Bank*, 112 U. S. 292.

As to the implied authority of a clerk, see *Doan* v. *Duncan,* 18 Ill. 97; Story on Agency, secs. 88, 89; *Craighead* v. *Peterson,* 72 N. Y. 279; *Hodge* v. *Combs,* 1 Black, 192.

A cashier of a bank can not, by his own action, impose on the bank any liability not already imposed by law or usage, (Wharton on Agency, sec. 687, note 3,) nor create any agency, (*United States* v. *City Bank,* 21 How. 356,) nor sell or mortgage its property. *Leggett* v. *Manufacturing Co.* 1 N. J. Eq. 441.

As to inference of authority to do one act from authority to do another, see *Thompson* v. *Elliott,* 73 Ill. 221; *Melvin* v. *Insurance Co.* 80 id. 446; *Padfield* v. *Green,* 85 id. 529; *Reynolds* v. *Ferree,* 86 id. 570; *Iron Mining Co.* v. *Bank,* 44 Mich. 344.

It has been insisted that Crain & Manson held out W. O. Manson as their agent having these powers, and having done so, and the appellee having lost its money thereby, appellants must make good the loss. This is not sound, for two reasons:

*First*—Because appellee did not make the loan by reason of the fact that W. O. Manson was so held out as agent. He acted on the presumption that the letter received was the letter of Crain & Manson. He made no inquiry, and did not know the supposed agent. Appellee can not maintain the position. *Thompson* v. *First Nat. Bank,* 111 U. S. 529; *Norton* v. *Richmond,* 93 Ill. 373.

*Second*—The officers of appellee did not act in good faith. As we have before remarked, the facts and circumstances required the bank to take notice, which it failed to do. A party, in order to hold another bound by the supposed acts of the agent, must act in good faith, and if he has notice before acting, he can not then act in good faith. *Iron Mining Co.* v. *Bank,* 44 Mich. 344.

If the inquiry had been made, the fraud would have been discovered. The facts charge the bank with notice of all the

knowledge its officers might have ascertained, and "a principal is not bound by a contract which is a fraud on him, and is known so to be by the person entering into the contract." 1 Lindley on Partnership, 299.

Messrs. BROWN & KIRBY, and Messrs. SPRINGER & DUMMER, for the appellee:

The question as to who had general charge of the establishment, was fully answered, and called for the conclusion of the witness.

The modification of appellants' sixth instruction, by inserting the words, "or to the public generally," is warranted by *Thompson* v. *National Bank*, 111 Ill. 537.

Their third instruction was properly refused, as not giving a correct definition of a general agent. *Noble* v. *Nugent*, 89 Ill. 522; *Insurance Co.* v. *Advance Co.* 80 id. 549; *Doan* v. *Duncan*, 17 id. 272.

When one of two innocent parties must lose from the dishonesty of a third, that one shall bear the loss who by his negligence has enabled the third to occasion it. *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Bank of United States* v. *Davis*, 2 Hill, 465; *Holmes* v. *Trumper*, 22 Mich. 427; *Farmers' Bank* v. *Butchers' Bank*, 16 N. Y. 133; *New York County* v. *Schuyler*, 34 id. 30; *Canal Co.* v. *Hathaway*, 8 Wend. 488.

Though limited by his employment to the banking business of Crain & Manson, William O. Manson was their general agent. Story on Agency, sec. 22; *Noble* v. *Nugent*, 89 Ill. 524.

The principal is liable for the acts of his general agent within the scope of his authority, although he may exceed his instructions. *Noble* v. *Nugent*, 89 Ill. 594; *Insurance Co.* v. *Advance Co.* 80 id. 549; *Harris* v. *Simmerman*, 81 id. 413; *Chicago Ry. Co.* v. *McMahon*, 103 id. 485; *Anderson* v. *Conley*, 21 Wend. 279.

Private instructions not to give notes to any but regular correspondents, are not binding on the public. *Packet Co.* v. *Parker,* 59 Ill. 23.

The public is not bound to inquire into the authority of the bank officer. By putting him in the position they accredit him to the public. *Munn* v. *Burch,* 25 Ill. 41; *Noble* v. *Cunningham,* 74 id. 51; *Ryan* v. *Dunlap,* 17 id. 45; Story on Agency, secs. 52-56.

William O. Manson being permitted to act as the manager of their bank, he was, as to the public, possessed of all the powers incident to such a position, notwithstanding private instructions narrowing his authority. Story on Agency, secs. 105, 106.

Whether William O. Manson was, of right, the manager of the bank, or mere clerk, he was *de facto* its cashier, and the bank was bound by his acts as such. *Bank of United States* v. *Dandridge,* 12 Wheat. 64; *Minor* v. *Mechanics' Bank,* 1 Pet. 46.

The limitation of the authority of William O. Manson, if assumed, did not affect those to whom the limitation was unknown. *Commercial Bank* v. *Norton,* 1 Hill, 501; *Bank of Vergenes* v. *Warner,* 7 id. 501; *Beers* v. *Phœnix Glass Co.* 14 Barb. 358; *Farmers' Bank* v. *Butchers' Bank,* 14 N. Y. 624; *Barnes* v. *Ontario Bank,* 19 id. 156.

By virtue of his position, William O. Manson had the power to bind the bank to this loan, and the defence that he intended to apply it to his own use does not affect the National bank, without proof that that bank knew of his purpose to do so. *Barnes* v. *Ontario Bank,* 19 N. Y. 152.

The position of appellants, that since William O. Manson applied the money to his own use, or filled with it a vacancy which he had created in the funds of Crain & Manson, is effectually disposed of in *Barnes* v. *Ontario Bank,* 19 N. Y. 152.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit by the First National Bank of Jacksonville, against John A. Crain and James W. Manson, upon a promissory note purporting to be made by Crain & Manson to the plaintiff, for $5000, dated at Jacksonville, Illinois, May 8, 1883, and payable four months after date, with eight per cent per annum interest after maturity. The plaintiff recovered in the circuit court a verdict and judgment for $5303.33, which judgment, on appeal to the Appellate Court for the Third District, was affirmed, and the defendants appealed further to this court.

The defendants' plea put in issue the execution of the note. It appears from the evidence, that the defendants, under the firm name of Crain & Manson, were retail merchants at Waverly, Illinois, and had been for a good many years, and for a number of years prior to the date of the note they were also private bankers, having a bank of deposit. Both the banking and goods departments were conducted in the same room. James W. Manson gave his personal attention to the business of the firm, Crain not being all the time an active man in the business, but both partners continuing a general supervision over the business of the firm. William O. Manson was a son of James W. Manson, and was employed as a clerk or cashier, having no interest, but working on a salary. He kept the books of both departments, and more generally attended to the banking department. He drew sight drafts, received deposits, issued certificates of deposit, and wrote letters for the firm. The firm had as correspondents, with whom accounts were kept, M. P. Ayers & Co., Jacksonville, and a house in each of the cities of St. Louis, Springfield, Chicago and New York. William O. Manson had authority to use the firm name at these particular places, and to sign the firm name to notes in the transaction of business at these banks, but not elsewhere. Defendants had never kept any

account with the First National Bank of Jacksonville, nor authorized William O. Manson specially to negotiate any loan there, nor had they any knowledge of his having done so till long after the firm dissolved,—August 23, 1883. The signature of the name of Crain & Manson to the note in suit was in the hand-writing of William O. Manson, and the note was given for money borrowed from the bank.

It is assigned for error that the circuit court erred in sustaining the plaintiff's objection to the following questions put to James W. Manson, one of the defendants, by his own counsel: "Was the banking department exclusively under the control of any one?"—"Who had general charge of the establishment, if any one?" Notwithstanding the objection was sustained, the witness appears to have answered, substantially, both questions,—as to the first, saying: "Banking was under control of defendants, as was the merchandising. W. O. Manson was hired to attend to that. He was some times away, but not long at a time." And to the second: "Both partners attended to the bank when it was necessary; we thought we had a good clerk in W. O. Manson for that; I often received deposits and paid out money and drew drafts; Mr. Crain generally left it to myself and son; firm had other clerks; we thought it was all right; no other clerk in banking department."

Objection is made to the admission of proof of the custom of banks in Waverly to borrow money on time. We think this was proper testimony, as tending to show that the borrowing of money was within the scope of the ordinary and customary business of the defendants.

Another question raised on the admissibility of evidence offered by the plaintiff, is as to the following paper, which the court permitted to be read to the jury:

"WAVERLY, ILL., *April, 1883.*

"Herewith please find signatures of persons authorized to sign for Crain & Manson:"

—With the firm name written three times, the first being in the hand-writing of William O. Manson, and the second in that of James W. Manson. The paper was properly admitted as an admission of James W. Manson, one of the defendants. It is said this paper was not furnished to the plaintiff, and it did not act upon the faith of the paper; that defendants' commenced business with the Commercial National Bank of Chicago about May 1, 1883, and that this was a private paper, which was forwarded to that bank in a letter, for its guidance alone. All this might have detracted from the force of the paper as an admission, and rendered it of but little weight; but still it can not be said to have been evidence which was irrelevant and erroneously admitted.

. The refusal of the court to permit proof of other fraudulent drafts drawn by William O. Manson in the name of the defendants, upon their correspondents in St. Louis, which is complained of by defendants, was proper. There being no attempt to bring knowledge of such drafts to the plaintiff, they were irrelevant as evidence in this suit.

Appellants complain of instructions Nos. 1, 2 and 5, given for the plaintiff. Numbers 1 and 5 were substantially alike, being to the purport that if the jury believed, from the evidence, that the defendants, Crain & Manson, were bankers at Waverly, Illinois, and that William O. Manson was their cashier, and intrusted by them with the general management of their bank, and the power to carry on all their general banking operations, and that it was one of the usual operations of a bank in Waverly and its vicinity to borrow money on time, and execute a note therefor, and that said William O. Manson, while so acting as cashier and manager for the defendants, borrowed in their name from the plaintiff the sum of $5000, and thereupon executed and delivered to the plaintiff the promissory note in evidence, then the verdict of the jury should be for the plaintiff, even though the said sum was appropriated by said William O. Manson to his own use. The

criticism made upon these instructions is, that they ignore the question of notice to plaintiff of sufficient facts to put it on guard and make inquiry as to the authority of William O. Manson to execute the note, and that the instruction was faulty in not defining the meaning of "general manager," or what constituted "general management." We do not think there was enough of evidence of such notice to have required the making of any reference to it in the instruction. All that is relied upon as tending to show any such notice, is the fact that at the time of the giving of the note there were delivered over several promissory notes of other persons, of over $5000 in amount, as collateral security, with authority, on maturity of the note given, to sell the collaterals at public or private sale, and without notice, and apply the proceeds to the payment of the note given. This may have been a transaction of a somewhat extraordinary character in its details, but it was all for the better securing of the payment of the note, and did not point to want of authority to execute the note, or to fraud in the giving of it. In the giving of such an instruction there was no occasion for defining what constituted a "general manager," or "general management." It was open to the defendants to have asked any instructions in that regard which they might have thought necessary. As propositions of law, we perceive no error in the instructions.

There is plainly no ground of complaint as to the second instruction, which was to the effect that the fact of the note being secured by collaterals did not affect the right of recovery.

Complaint is made of the modification by the court of defendants' sixth instruction. As modified, it was, in substance, that when an agent acts beyond his authority, the principal is not bound, unless he had held out to the party dealt with, *or to the public generally*, the agent as having authority to do the act,—the modification consisting of the insertion of the words

in italics. The case cited by appellants' counsel (*Thompson* v. *First National Bank*, 111 U. S. 537,) as against such modication, seems to lend somewhat of countenance thereto, in its being there said: "There may be cases in which the holding out (as a partner) has been so public and so long continued that the jury may infer that one dealing with the partnership knew it, and relied upon it, without direct testimony to that effect." As asked, the instruction was erroneous in ignoring any holding out to the public. Such holding out, here, might have been to the extent above indicated, and the instruction was properly enough modified so as to recognize that element of holding out to the public. The modification might have been made more full by laying down to what extent the "holding out" must have been; but we are not prepared to say there was error in this regard. Had the defendants desired a more full instruction in that respect, it was open to defendants to have asked it.

The third instruction asked by defendants, "that a general agent is defined to be one who has authority to transact all the business of his employer," was properly refused. Power to act generally in a particular business or a particular course of trade in a business, however limited, would constitute a general agency, if the agent is so held out to the world, however so restricted his private instructions may be. *Doan* v. *Duncan*, 17 Ill. 272; Story on Agency, sec. 17.

Defendants' tenth refused instruction respected the question of notice, remarked upon in passing upon the first and fifth instructions for the plaintiff, and what was there said sufficiently disposes of the objection in not giving this tenth instruction.

Defendants' fifteenth refused instruction was, that the fact that defendants authorized William O. Manson to sign their name to notes to the firm of M. P. Ayers & Co., or to other correspondents, would not of itself authorize said William O. Manson to sign the name of defendants to the note in suit,

was objectionable in singling out a particular fact, and telling the jury that such alone would not warrant a recovery.

Defendants' sixteenth refused instruction, though somewhat exposed to the same objection as the last, and claimed by appellants to be equally faulty, we think to be distinguishable, and that it should have been given. It was in reference to the paper which has been before mentioned, and set out as having been given by defendants to the Commercial National Bank of Chicago,—that the furnishing of that paper to that bank would not of itself confer authority upon William O. Manson to execute to the plaintiff the note sued on. The paper purported on its face to give the signatures of persons who were authorized to sign for Crain & Manson, and it was without limit. The paper was extremely liable to mislead the jury to think that the authority was unlimited to sign the name of Crain & Manson not only at that, the Commercial Bank, but at any other bank; and to guard against the jury being thus misled, the instruction was a very proper one. Yet there was such a weight of evidence, besides, of the holding out by defendants of William O. Manson as possessing authority to borrow money and execute notes in their name, that we can not think the not giving of this instruction was of any harm to defendants, and that it was a material error.

The refusal to give the seventeenth instruction asked by defendants was manifestly correct.

We find no material error in the record, and the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*