NELLIE J. KILBORN v. PRUDENTIAL INSURANCE COMPANY.[1]

August 3, 1906.

Nos. 14,822—(178).

**Insurance Contract.**

When an applicant for insurance pays the first premium to the agent, the contract is consummated when the company accepts the application, executes a policy and deposits it in the mail directed to its agent for delivery to the applicant.

[1] Reported in 108 N. W. 861.

**Insurance Agent.**

An agent is presumed to be acting within the scope of his authority.

**Authority of Agent.**

The agent of a foreign insurance company who was authorized to solicit insurance in this state had authority by force of section 88, c. 175, p. 437, Laws 1895, to collect the first premium.

**Same—Promissory Note.**

An agent of a foreign life insurance company authorized by chapter 175, p. 392, Laws 1895, to solicit insurance and collect the first premium, has apparent authority to take a promissory note for the first premium.

**Acceptance of Note.**

Unless the applicant for insurance has knowledge of express limitations upon the authority of the agent, the acceptance by the agent of a note in payment of the first premium is binding upon the company.

Appeal by plaintiff from a judgment of the district court for Swift county, entered pursuant to the findings and order of Powers, J. Reversed and judgment ordered for plaintiff.

*F. P. Olney,* for appellant.

*Geo. W. Champlin,* for respondent.

ELLIOTT, J.

This was an action to recover upon a policy of life insurance. The case was tried by the court without a jury and judgment ordered for the defendant. From this judgment the plaintiff appeals.

It appears from the stipulation of facts that during the time referred to the defendant was a corporation organized under the laws of the state of New Jersey for the purpose of writing contracts of insurance and was duly authorized to write such contracts of insurance within the state of Minnesota. Timberlake & Coan were the general state agents of the defendant for the state of Minnesota, for the soliciting of insurance and the delivery of policies, and Albert Knudtson was a soliciting agent for the company. On December 19, 1904, Clint. Maxon made an application for insurance in the defendant company and delivered it to said Knudtson. Maxon was also examined by a medical examiner and the examiner's report was attached to the application. At the time the application was made, Maxon executed and delivered to Knudtson two promissory notes for the aggregate sum of $61.32;

one for $30.66 payable in one month, and the other for the same amount payable in six months from date. The notes were payable to Knudtson and drew interest after maturity only. It is stipulated that no part of the first premium for said insurance was ever paid or tendered by said Maxon or any other person in his behalf unless the execution and delivery of these notes constituted payment. Knudtson, on the day the application was made and the notes given, forwarded the application with the medical examiner's report attached thereto, to Timberlake & Coan in Minneapolis. It was received by them on December 21, 1904, and at once forwarded by mail to the defendant at its home office in Newark, New Jersey. On December 23, 1904, the company executed a policy of insurance upon the application and mailed the same to Timberlake & Coan in Minneapolis, for delivery to Maxon. It was received by them on December 26, 1904. On December 24, 1904, Maxon was shot, and died at the village of Kerkhoven. Timberlake & Coan learned of his death on December 26, 1904, and thereupon returned the policy to the company at Newark, New Jersey. On December 26, 1904, Knudtson delivered the two notes to Timberlake & Coan, who, until that time had no knowledge of their execution. They marked the notes void, and canceled and forwarded them on January 12, 1905, by mail to the plaintiff at her supposed address in St. Cloud, Minnesota. The letter was returned to Timberlake & Coan, who made other attempts to learn the whereabouts of the plaintiff, but were unsuccessful. No attempt was made to collect the notes, and nothing was ever paid thereon. Demand was made by the plaintiff for the usual blanks upon which to make the proof of death. The company refused to furnish such blanks for the reason as given that "no premium was ever paid upon this application, and therefore no liability exists." It is further admitted that plaintiff had an insurable interest in Maxon's life, and that Maxon was in good health up to the time he was killed. The court found upon these stipulated facts that the first annual premium required by the application was never paid, and that the policy was never delivered.

1. We think that the only serious question of the case is whether the premium was paid by the delivery of the notes in question. The application which was forwarded to the company stated that $61.32 had been paid in advance upon account. The policy was executed

by the defendant with the understanding that the premium had been paid to the agent, and that the insured was therefore entitled to the immediate delivery of the policy. It is very well settled that where nothing remains to be done by the insured, the mailing of the policy duly executed to the insured or to an agent of the company for delivery to the insured constitutes a delivery. Yonge v. Equitable Life Assur. Soc. (C. C.) 30 Fed. 902; Mutual v. Farmer, 65 Ark. 581, 47 S. W. 850; Hallock v. Comm. Ins. Co., 26 N. J. L. 268; New York v. Babcock, 104 Ga. 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am. St. 134; Hartford v. Lasher Co., 66 Vt. 439, 29 Atl. 629, 44 Am. St. Rep. 859; Dailey v. Ass'n, 102 Mich. 289, 57 N. W. 184, 26 L. R. A. 171. The contract is complete when the application is accepted, and the acceptance signified by mailing the policy. Tayloe v. Merchants Co., 9 How. 390, 13 L. Ed. 187; Heiman v. Phœnix Mut. Life Ins. Co., 17 Minn. 127 (153), 10 Am. 154; Article, 16 Western Jurist 340.

2. The policy contains no provision that the first premium shall be paid in cash only. Premiums are made payable at the home office in Newark, New Jersey, or to an agent of the company on or before due in exchange for official receipts signed by the president and secretary and countersigned by an authorized agent of the company. This provision manifestly has no application to the first premium, and if it had it would not be controlling, as the policy was issued with knowledge that the first premium had already been paid to the agent of the company who at the time could not have had possession of the policy or an official receipt. The application upon which the policy was issued recited that the applicant had paid already in advance on account, $61.32. The company, therefore, knew that the agent had received the first premium, and, after issuing the policy with this information, it could not be heard to deny the authority of the agent who received the premium had it been paid in cash.

There is also a provision in the policy to the effect that no agent has power to extend the time of paying the first premium, but the insured never saw the policy and provisions in it of which he had no knowledge could have no application to matters which occurred before the policy was issued. Kausal v. Minnesota Farmers Mut. Fire Ins. Co., 31 Minn. 17, 16 N. W. 430, 47 Am. 776; Continental Ins. Co. v. Ruckman, 127 Ill. 364, 20 N. E. 77, 11 Am. St. 121. It must also be re-

membered that there is no evidence in the record of any express limitations upon the authority of Knudtson or as to the manner in which he is to collect the premium. The agent assumed to have authority to accept the notes and there is a presumption that a person known to be an agent is acting within the scope of his authority. Inglish v. Ayer, 79 Mich. 516, 44 N. W. 942; Austrian v. Springer, 94 Mich. 343, 54 N. W. 50, 34 Am. St. 350; Bessemer v. Campbell, 121 Ala. 50, 25 South. 793, 77 Am. St. 17. It follows that if the delivery of the promissory notes to Knudtson constituted payment of the first premium the policy was in force when the insured died, and the plaintiff is entitled to recover.

3. The question is as to the authority of Knudtson. Where an insurance policy provides that it shall not be effective until the first premium is paid, it does not take effect even although delivered until this provision is complied with. But the manner in which payment is made is immaterial if it is at the time acceptable to the company. Hence, where the policy is silent as to the mode of payment, and the statute does not require it to be paid in cash (as in State v. Moore, 48 Neb. 870, 67 N. W. 876), and the company or its duly authorized agents delivers the policy and accepts the applicant's notes for the first premium, it is presumed that the notes are accepted as payment. Union v. Taggart, 55 Minn. 95, 56 N. W. 579, 43 Am. St. 474; Stewart v. Union, 155 N. Y. 257, 49 N. E. 876, 42 L. R. A. 147; Stepp v. National Ass'n, 37 S. C. 417, 16 S. E. 134; Miller v. Life Ins. Co., 12 Wall. 285, 302, 20 L. Ed. 398.

In May, Ins., § 134, it is said: "Where the agent is authorized to accept the payment of premiums, he may exercise his discretion as to the mode of payment." See also Richards, Ins., § 93. The authorities very generally hold that an agent who is authorized to make contracts of insurance and deliver policies has implied authority to accept notes for the first premium. Tooker v. Security, 26 App. Div. 372, 49 N. Y. Supp. 814; Id., 165 N. Y. 608, 58 N. E. 1093; Mutual Life Ins. Co. v. Logan, 87 Fed. 637, 31 C. C. A. 172; Newark v. Kenton, 50 Oh. St. 549, 35 N. E. 1060, 22 L. R. A. 768; 1 Joyce, Ins., § 77, and cases there cited. But this authority is sometimes denied to subagents of the general agents, and to what are known as special or soliciting agents. Pennsylvania Casualty Co. v. Bacon, 133 Fed.

907, 67 C. C. A. 497; Continental v. Willets, 24 Mich. 268. But in National v. Twiddell (Ky.) 58 S. W. 699, it was held that a local agent and solicitor had authority to accept notes. In New York v. Mc-Gowan, 18 Kan. 300, the authority was conceded to an agent whose business it was to solicit insurance and receive the first premium. Chief Justice Horton said: "An agent of an insurance company whose business it is to solicit applications for insurance and receive the first premiums has the right to waive the condition requiring the payment in money and to accept the promissory note of the applicant or of a third party in lieu thereof." Mutual v. Allen, 113 Ill. App. 89. See also Mississippi v. Neyland, 9 Bush, 430. In Michigan v. Hall, 60 Ill. App. 169, it was held that a local agent of a life insurance company might accept from an applicant for insurance a note for the first premium, although the policy required the payment to be made in cash, and the rules of the company, of which the applicant had no knowledge, forbade the agent to accept notes. In Carson v. Jersey City, 43 N. J. L. 300, 39 Am. 584, it was held that the premium was paid when the agent accepted the applicant's note and discounted it thus receiving the cash.

There are also authorities which hold that the premium may be paid by offsetting a debt owed by the agent to the insured, but this doctrine is of doubtful soundness. It is universally conceded, however, that the agent may make his own terms with the insured so far as that part of the premium which he is entitled to retain as his commission is concerned. John Hancock Ins. Co. v. Schlink, 175 Ill. 284, 51 N. E. 795. And see Hoffman v. Hancock Mut. Life Ins. Co., 92 U. S. 161, 23 L. Ed. 539.

In Godfrey v. New York Life Ins. Co., 70 Minn. 224, 73 N. W. 1, it appeared that Godfrey made an application to one of defendant's agents for life insurance, and delivered to the agent her promissory note for the amount of the first premium. The agent never accounted to the company for the note, but transferred it to Sandford, who was a good faith purchaser for value. The policy was never delivered, and Godfrey brought suit against the insurance company to recover the amount of the note which she had been required to pay to Sandford. It appeared that the agent had been in the habit of taking such notes and discounting them at a certain bank. This was known to

the general agent of the company, and it was held that, under the circumstances, notwithstanding written instructions to the contrary, the insurance company was bound by the act of the agent in accepting the note. This could only be upon the theory that the general agent had authority to represent the company and waive any provision requiring cash, or that the company through its general agent having a knowledge of the custom had acquiesced therein, and was therefore estopped to deny the authority of the agent.

The designation of agents as "general," "special," "local," and "soliciting" agents in a rough way serves to indicate their powers, but it is of little importance as between the principal and persons who deal with the agent. It is commonly said that a general agent is one who has power to transact all the business of his principal of a particular kind, or in a particular place and a special agent is one who is authorized to act only in a specific transaction. Lord Ellenborough, Whitehead v. Tuckett, 15 East, 400; Story, Ag., § 17; Mechem, Ag., § 6; Clark & Skyles, Ag., § 198. The mere fact that an agent's authority is limited to a particular business does not make his agency special, if the authority is general and gives him power to perform all acts necessary for the transaction of that business and he is so held out to the world. Crain v. National, 114 Ill. 516, 519, 2 N. E. 486. Locality or extent of territory is not the test of general or special agency. Butler v. Maples, 9 Wall. 766, 19 L. Ed. 822; Continental v. Ruckman, 127 Ill. 364, 20 N. E. 77, 11 Am. St. 121.

Upon these authorities it may well be held that Knudtson was a general agent for the transaction of certain specified portions of his principal's business. The stipulation of facts upon which the findings of the trial court rest are somewhat meager and eliminate many of the features ordinarily found in these cases. Thus it does not appear whether Knudtson's authority was limited by any contract between him and the company or by any special instructions. Nor is there any evidence to show whether he had been in the habit of accepting notes for premiums. We are informed that Timberlake & Coan were the general state agents with authority to solicit insurance and deliver policies, and that Knudtson was a soliciting agent. We are left to infer his powers from this designation of his agency. But the authority of Knudtson is determined by the statute regardless of any contract

between him and the company. He was acting for the company in the negotiation of a contract of insurance, and at that time section 88, c. 175, p. 437, Laws 1895, provided that

> An insurance agent or broker who acts for a person other than himself in negotiating a contract of insurance by an insurance company shall for the purpose of receiving the premium therefor be held to be the company's agent whatever conditions or stipulations may be contained in the policy or contract.

R. L. 1905, § 1716, strengthens and enlarges this language by providing that

> Every insurance agent or broker who acts for another in negotiating a contract of insurance by an insurance company shall be held to be the company's agent for the purpose of collecting or securing the premiums therefor, whatever conditions or stipulations may be contained in the contract or policy.

Knudtson was thus, by force of the statute, the agent of the defendant company for soliciting the insurance and collecting the premium. It will be noted that the revised statutes extend the limits of the agent's authority by authorizing him to secure as well as collect the premiums.

Section 89, p. 437, c. 175, Laws 1895, provided that no officer or agent of foreign insurance companies should make or procure to be made or act or aid in any manner in the negotiation of any insurance with such companies, until he had secured from the insurance commissioner of the state a certificate of authority so to do. It was also provided that

> While such certificate remains in force the company shall be bound by the acts of the person named therein within his apparent authority as its acknowledged agent.

Soliciting agents of foreign insurance companies are selected by the companies, and each agent is required to obtain the certificate from the insurance commissioner. It must be presumed that Knudtson held such a certificate as otherwise he would be guilty of a misdemeanor. He was therefore the agent of the insurance company for the purpose of soliciting insurance and collecting the premium, and the company is bound by all his acts which were within the scope of the apparent authority conferred upon him.

By creating an agency the principal bestows upon the agent a certain character, and his authority in a given case is an attribute of this character. If the principal by his express acts or as the lawful and legal result of his words or conduct, impresses upon the agent the character of one authorized to speak or act for him in a given capacity, the authority results as a necessary attribute of the character and the principal will not be heard to assert as against third persons who have relied thereon in good faith, that he did not intend to confer so much authority or that he had given the agent express instructions not to exercise it. The principal has the right to impose lawful restrictions and limitations upon the agent, and they are binding and conclusive upon all who have knowledge of them, provided the principal has done nothing inconsistent by which such limitations are nullified.

When an agent is appointed for a particular purpose and authorized to do certain acts the liability of the principal for such acts depends upon (1) the power actually conferred; (2) the power reasonably necessary for the execution of those actually conferred; (3) the powers annexed by custom or usage; and (4) the powers in addition thereto which the principal by his words or conduct leads third persons reasonably to believe that the agent possesses. The second and third of these elements may be referred either to the doctrine of implied authority or to estoppel. Implied authority is actual authority. It arises out of the authority expressly conferred. A principal will be presumed to have conferred all auxiliary authority reasonably necessary to make the express authority effective. But it may be necessary at times to invoke the doctrine of estoppel to prevent the principal from showing that the fact is contrary to this reasonable presumption. Huffcut, Ag., § 52. The fourth element rests entirely upon the doctrine of estoppel. The principal has held the agent out as one having the authority which to a reasonably prudent person he appears to have. We are here dealing with matters as they appear, not necessarily as they are in fact. The point of view is that of the third person who is dealing with the agent. The principal being responsible for the conditions must bear the risks which attach thereto. Having made it appear that his agent has authority, the law raises a bar which prevents him from proving that appearance is not reality. The es-

toppel then arises out of the act of holding the agent out with what appears to be authority to do certain acts and it is not necessary to show that the principal had knowledge of the fact that the agent was actually exercising authority beyond the scope of his actual authority. Of course the principal cannot be estopped unless he permitted the agent to assume the authority or placed him in the situation from which the authority became apparent. But when, by his voluntary act, he has placed his agent in such a situation that a person of ordinary prudence, conversant with business usage is justified in assuming that the agent has authority to perform a particular act in a particular manner on behalf of his principal, he is estopped to deny the authority as against a third person who in good faith relies upon such appearance. Johnston v. Milwaukee, 46 Neb. 480, 64 N. W. 1100; Johnson v. Hurley, 115 Mo. 513, 22 S. W. 492.

A person of ordinary prudence and knowledge of the usages of the life insurance business, who is solicited by an agent who has authority to collect the first premium, may fairly and reasonably rely upon the assertion of the agent that he has authority to give a short credit for the first premium. Especially is this true when the application which he signs does not state that the first premium is to be paid in cash. It is a matter of common knowledge that this is one of the methods by which such agents procure business. The applicant has the right to believe that the insurance company will not send to him an agent who will assume authority which he does not properly possess, and thus lead him to believe that he is insured when he is not insured. The company selects its agents, and cannot be permitted to throw the entire responsibility for their misconduct upon a person who deals with them in good faith. The fact that the face of the notes given to Knudtson amounted to slightly less than the sum due for the first premium is not important. It will be presumed that the difference was waived. Thum v. Wolstenholme, 21 Utah, 446, 61 Pac. 537; Triple v. Williams, 121 Ala. 138, 26 South. 19, 77 Am. St. 34. In Jackson v. Mutual Ben. Life Ins. Co., 79 Minn. 43, 81 N. W. 545, 82 N. W. 366, it is said that the insured never understood that he gave the notes in payment for the premium. It also appeared that the receipt delivered to the insured in return for his notes contained on its face a statement which limited the authority of the agent. The deci-

sion must rest upon its own facts, which are essentially different from those at bar.

The judgment is reversed, with directions to the trial court to enter judgment in favor of the plaintiff upon the facts as stipulated by the parties.