# MYRTLE ALLEN v. METROPOLITAN LIFE INSURANCE COMPANY.[1]

March 21, 1930.

No. 27,677.

*A. V. Rieke, Bonita F. Rieke* and *Maurice H. Rieke,* for appellant.
*Snyder, Gale & Richards,* for respondent.

[1]Reported in 229 N. W. 879.

546

STONE, J.

Action on a policy of life insurance resulting in a verdict for plaintiff. On an alternative motion for judgment or a new trial, judgment for defendant was ordered notwithstanding the verdict. Plaintiff appeals.

The policy insured the life of Donald Max Allen, who died November 6, 1927. Plaintiff, his mother, is the beneficiary. Judgment for defendant was directed on the ground that the policy had never been delivered or otherwise become effective as a contract binding upon defendant. In October, 1927, Otto F. Biorn was a soliciting agent for defendant. R. T. Allen, father of the insured, was an agent for a washing machine company. The claim of plaintiff, sustained by the verdict, is that Allen solicited Biorn to buy a washing machine; that Biorn having no funds for such a purchase, it was agreed that Allen and his son Donald should each take out a policy in defendant through Biorn and that the first premium on Donald's policy, $10.98, should be paid by R. T. Allen's paying that amount to his company as the first instalment on Biorn's purchase of a washing machine. R. T. Allen made that payment to his company and took its receipt.

There is no evidence that the arrangement (Biorn denies that it was altogether as Allen claims) was ever even made known to, much less approved by, any agent of defendant other than Biorn. The application for his policy, signed by Donald Max Allen, October 17, 1927, was received and approved by defendant at its home office in New York City. The policy was issued October 24, 1927, and sent to defendant's Minneapolis office, with what instruction does not appear. November 3, 1927, three days before the death of the insured, Biorn and another agent for defendant took the policy to the Allen home for the purpose of delivering it and collecting the first premium. They did not make the delivery because the premium was not forthcoming.

The application of the insured for the policy was an offer on his part. Unless it was accepted there was no contract. It stipulated as a condition precedent to defendant's liability not only that the

application should be approved by defendant, which it was, but also that a policy should be "issued and delivered" and the first premium "paid to and accepted by the company during the lifetime of the applicant." There is no claim that any of these conditions were waived or that others were substituted. The argument for plaintiff is rather that they were performed—that (1) R. T. Allen's payment of the first instalment on the washing machine operated, under his agreement with Biorn, as a payment to defendant of the first premium on the policy; and that (2) the mailing of the policy by defendant to its Minneapolis office was equivalent to delivery to the insured.

■ By statute, G. S. 1923 (1 Mason, 1927) § 3757, each agent negotiating insurance must be held "the company's agent for the purpose of collecting or securing the premiums therefor." But that implies no authority in the agent to accept payment in anything but money unless he is authorized by the company to do so, as sometimes is the case with premium notes. He is not authorized to accept washing machines or other merchandise nor to agree that the premium or any part of it shall be applied on his own debt. No express authority of that kind is claimed. There can be no other, for "it is an elementary principle, applicable alike to all kinds of agency, that whatever an agent does can be done only in the way usual in the line of business in which he is acting. There is an implication to this effect arising from the nature of his employment, and it is as effectual as if it had been expressed in the most formal terms. It is present whenever his authority is called into activity, and prescribes the manner as well as the limit of its exercise." Hoffman v. John Hancock M. L. Ins. Co. 92 U. S. 161, 164, 23 L. ed. 539; Tomsecek v. Travelers Ins. Co. 113 Wis. 114, 88 N. W. 1013, 57 L. R. A. 455, 90 A. S. R. 846. In consequence an insurance agent cannot bind his principal by an agreement that a premium shall be applied in reduction or cancelation of his own indebtedness. Briggs v. Collins, 113 Ark. 190, 167 S. W. 1114, L. R. A. 1915A, 686. (In the last volume cited the cases are reviewed in a note entitled "Payment of insurance premium by cancelation of agent's indebtedness.")

The controlling question is not whether the policy was delivered but whether defendant ever assented to its going into effect as a contract. Of that, delivery would have been but evidence—ordinarily but not always conclusive. The conclusive thing here is that neither by delivery of the policy nor otherwise did defendant assent to become bound as insurer. Intentional nondelivery of the policy is established. That, with nonperformance of the condition of the application that the first premium be paid to and accepted by the insurer during the lifetime of the insured, is conclusive that the policy never became effective as a contract. Sawyer v. Mutual L. Ins. Co. 166 Minn. 207, 207 N. W. 307. Not at all in point is Kilborn v. Prudential Ins. Co. 99 Minn. 176, 108 N. W. 861. There the applicant was held to have paid the first premium; the company had accepted the application, issued the policy and mailed it to the local agent for delivery to the applicant. The company had finally assented to become bound, and that was enough. "The only serious question" in the case was whether the premium had been paid "by the delivery of the notes in question."

Order affirmed.