## ERNEST LUECK v. NEW YORK LIFE INSURANCE COMPANY.[1]

January 15, 1932.

No. 28,622.

*Doherty, Rumble, Bunn & Butler* and *R. O. Sullivan,* for appellant.

*A. J. Rockne* and *D. C. Sheldon,* for respondent.

HILTON, J.

Action to recover $2,000 on a life insurance policy. Defendant appeals from an order denying its motion for a new trial.

Defendant is a foreign life insurance company licensed to do business in Minnesota. One Hastings was its soliciting agent at Pine Island, in this state, negotiating contracts of insurance. After solicitations he secured an application for a policy from Arnold

[1]Reported in 240 N. W. 363.

Lueck, a 17-year old son of plaintiff, who was named therein as beneficiary. Hastings had Arnold examined by defendant's local physician on May 12, 1928. This examination showed the applicant to be an insurable risk.

On May 14 Hastings went to the farm home of the Luecks near Pine Island to secure the signing of the application. The father and son stated that they did not have any cash at the house but would be in town the next morning, when the latter would sign the application and pay the cash premium of $11.03. Upon Hastings' insistence the application was then signed at the home by Arnold, and a note for the premium, signed by the father and son, was given Hastings; the father was financially responsible. From the application Hastings had stricken out certain words and inserted others by means of which May 14, 1928, was made the effective and anniversary day of the policy to be issued.

We have here a signing of the application, a giving of a note, an agreement to be in town the next morning and pay the cash, and the assurance of the agent that "everything is all right." The agreement was kept; early the next morning plaintiff went to Hastings' office and there paid him in cash the $11.03 premium and asked for a receipt. Hastings then said, as he himself testified:

"When he paid the cash I told him that I couldn't give him a receipt other than that with the application. That was the company's rule, and as long as the applications had gone in to the branch office it was impossible for me to tear them off and give them to him. He would have to take my word for it."

Attached to the application were two detachable coupons, one a declaration to be signed by the applicant stating that he had paid the first premium, the other a receipt for such payment to be signed by the agent. Neither the declaration nor the receipt was filled out, and neither coupon was detached. Hastings at once sent the application with the blank coupons attached to defendant's branch office at St. Paul, where the blank receipt coupon was detached and destroyed. The application was sent to defendant's home office in New York, where it was investigated and approved; a policy was

issued on May 18 and sent by mail to the St. Paul office for delivery to the insured. It was never delivered to the insured or to plaintiff. The cash for the premium was paid defendant. A tender back of the amount thereof was later made to plaintiff and refused.

On May 17, 1928, Arnold was kicked by a horse and severely injured. After an operation he died on June 2, 1928. The policy, in accord with the terms of the application, provided for the payment of $1,000 in case of death, with an additional $1,000 if death resulted from certain external, violent, and accidental means. Arnold's death was from a cause which entitled the beneficiary to the additional amount. The case was tried to the court without a jury and resulted in an order for judgment in plaintiff's favor for $2,000 with interest.

The following provision in the application (as italicized) is of comparatively recent origin:

"It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination; *provided, however, that if the applicant, at the time of making this application, pays the agent in cash the full amount of the first premium for the insurance applied for in Questions 2 and 3 and so declares in this application and receives from the agent a receipt therefor on the receipt form which is attached hereto, and if the Company, after medical examination and investigation, shall be satisfied that the applicant was, at the time of making this application, insurable and entitled under the Company's rules and standards to the insurance, on the plan and for the amount applied for in Questions 2 and 3, at the Company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not.* 2. That a receipt on the form attached

*as a coupon to this application form is the only receipt the agent is authorized to give for any payment made before the delivery of the policy.*"

The application here was an offer on the part of the applicant; the offer was accepted by defendant and a contract consummated. Kilborn v. Prudential Ins. Co. 99 Minn. 176, 108 N. W. 861; Allen v. Metropolitan L. Ins. Co. 179 Minn. 545, 229 N. W. 879.

In New York L. Ins. Co. v. Abromietes, 254 Mich. 622, 236 N. W. 769, 770, the same form of application was involved. In that case assured paid the premium to the agent but did not sign the declaration as to such payment nor obtain receipt from the agent, as provided for in the application. The Michigan court held against the insurance company and among other things said:

"In the present case, the assured and defendant were dealing with plaintiff's agent. The record indicates that the parties were foreigners, and that neither the assured nor her sister were experienced in business. It seems more than probable that both the receipt and the indorsement on the application would have been executed had their importance or necessity been known to assured or defendant by plaintiff's agent. In securing the application, he was acting for plaintiff. Although he had no right to alter the terms of the contract, his neglect or omission to give the receipt and see to it that the indorsement be made on the application should not be attributable to defendant. See Hoyle v. Grange Life Assurance Association, 214 Mich. 603, 607, 183 N. W. 50. At least, plaintiff should not profit by such neglect or omission in view of the fact that it shows no resulting loss or damage and admits the payment of the first premium at the time the application was signed."

If the facts here show a cash payment of the premium the plaintiff should recover. There was here, to all proper intendment and purpose, a cash payment of the premium at the time the application was signed and delivered to the agent, Hastings. The company received the premium, approved the application, issued the policy, and sent it for delivery.

Hastings was defendant's agent, not the agent of the Luecks. G. S. 1923 (1 Mason, 1927) § 3757, provides:

"Every insurance agent or broker who acts for another in negotiating a contract of insurance by an insurance company shall be held to be the company's agent for the purpose of collecting or securing the premiums therefor, whatever conditions or stipulations may be contained in the contract or policy. * * *" See 3 Dunnell, Minn. Dig. (2 ed.) § 4717; Enge v. John Hancock Mut. L. Ins. Co. 183 Minn. 117, 236 N. W. 207, and cases cited.

Among the cases cited by defendant are Zemler v. New York L. Ins. Co. 177 Minn. 273, 225 N. W. 81 (in that case no cash was paid or tendered); Olson v. American C. L. Ins. Co. 172 Minn. 511, 216 N. W. 225 (the application for insurance was rejected); Allen v. Metropolitan L. Ins. Co. 179 Minn. 545, 229 N. W. 879 (the premium was not paid); Sawyer v. Mutual L. Ins. Co. 166 Minn. 207, 207 N. W. 307 (no premium paid). All these cases are here clearly distinguishable on the facts. Cases cited wherein the application did not contain the above quoted provision are not helpful.

If defendant should prevail, it would only be by a literal and most technical construction, which under the circumstances here would be unjustifiable. The defendant prepared the form of applications; the receiving of cash for the first premiums in advance and the making of the insurance effective at the date of the application were most advantageous provisions for defendant and would avoid in many instances policy refusals. Where a contractual relationship is established under the application proviso above quoted (in the absence of fraud) the assured would not by refusing to accept the policy be entitled to recover back the premium paid. The proviso was a proper one and manifestly for the benefit of the company. Here there was absolute good faith on the part of the assured and this plaintiff, and there was nothing to indicate any wrong intention on the part of the agent at the time the application was secured and the cash paid.

Under the circumstances of this case, in all good conscience and justice and as a matter of legal right, plaintiff should prevail.

Order affirmed.