## GENE MARTIN v. BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA.[1]

February 17, 1933.

No. 29,324.

*L. S. Miller,* for appellant.

*Ole J. Vaule* and *William P. Murphy,* for respondent.

HILTON, JUSTICE.

Appeal from an order denying an alternative motion for judgment notwithstanding the verdict or for a new trial.

Action brought by the beneficiary named therein to recover on two insurance policies, one an ordinary life policy, the other a disability and accidental death, each in the sum of $2,000. The in-

[1]Reported in 246 N. W. 882.

sured was accidentally killed on May 8, 1930. The verdict was for $4,000 and interest.

On March 27, 1930, L. M. Shanklin, a soliciting agent of defendant residing at Galesburg, Illinois, went to East Moline, Illinois, and solicited Edward W. Martin, resident therein, husband of plaintiff, for life and accident insurance. At that time a proper application for such insurance was filled out by Shanklin and duly signed by Martin. The first quarterly premium was the sum of $25.21. Martin, at the request of Shanklin, then gave him a check for that amount, payable to Shanklin's order, which check had a notation thereon, "Cash May 1, 1930." It was drawn on the Manufacturers State Bank of East Moline. In exchange for said check Shanklin signed and gave to Martin a company form receipt, the face of which was as follows:

"$25.21                                         Mar. 27, 1930.

"Received of Edward W. Martin Twenty Five
21/100 . . . . . . . . . . . . . . . Dollars
as a deposit on application for renewal of $2000.00 E 50 A & H Insurance
              (State whether Life, Accident, Combination)
in the Business Men's Assurance Company of America, Kansas City, Missouri. If such application be not approved or deposit not accepted, the amount named herein will be promptly refunded.
P. D. Check 5-1-30.                          L. M. Shanklin"

Paragraph 14 of the application as filled out is:

                                  Annually        ( )
"Amount of premium? $25.21. How Payable? Semi-annually ( )
                                  Quarterly      (X)
                        I have paid P. D. Check
                    (Check mode of payment desired.)
to apply on first QTR premium on policy applied for, in accordance with the provisions of receipt issued herefor which I hereby accept and agree to conditions thereof."

Instead of one policy being issued providing for full coverage, defendant issued two, in compliance (as the evidence shows) with

a requirement of Illinois law. The premium for the life policy was $14.86, and for the other $10.35.

On the reverse side of the application (which called for an "All Ways" policy—covering life, disability, and accidental death) is a report entitled: "Additional Data to be Furnished by Salesman in Every Case—to Avoid Delay." This report is divided into 12 interrogatories. Among others so answered by Shanklin was the following:

"12. Settlement Received: Cash $25.21 PD Check."

The usual printed forms of the company were used by Shanklin, including the application, receipt, reports, etc. The check so delivered to Shanklin has been in the possession of the defendant and its agent ever since. It was never presented to the bank for payment.

On April 5, 1930, Shanklin dated the application taken by him on March 27 and sent it with other applications to the company at its home office at Kansas City, Missouri. In his letter transmitting the applications (relative to the policies here involved), under the head of "Amount Collected," appears "P. D. Ck. Premium 25/21." On April 10, 1930, the company approved the application, issued the two Martin policies called for therein, and forwarded them to Shanklin for delivery to the assured. A photostatic copy of the application was attached to each of the policies.

In the life insurance policy appears the following:

"This insurance is issued in consideration of the application herefor, * * *, and the payment in advance of Fourteen and 86/100 Dollars, as the premium for term insurance ending on the 10th day of July, 1930, * * *, and in consideration of the further payment of a like amount on that date and on the corresponding day of each third month in every policy year thereafter * * *."

In the accident policy this appears:

"Date of Policy April 10, 1930. Term Expires July 10, 1930."

The foregoing clearly indicates the acceptance of the check as payment "in advance" of the necessary premiums.

After receipt of the policies and on April 19, 1930, using a letter-head of defendant, Shanklin sent a letter to Martin in which he stated:

"I have the policy we applied for recently about lined up and ready to go. I am sure this protection will do for you many things you want done.

"Any time that I can be of service to you please let me know.

"I will be sending the policy to you in a short time."

Shanklin testified that all that was necessary for him to do was to mail or deliver the policies to Martin, and that was why he had written that he would mail them to him in a short time. Evidently nothing remained for Martin to do. The policies were not delivered by Shanklin as promised in his letter.

On May 19, 1930, plaintiff wrote the insurance company notifying it of Martin's death. The company notified Shanklin of the letter, and he then returned the policies, together with Martin's check, to defendant. Defendant refused to make payment of plaintiff's claim, and this action followed.

At the trial there really was only one question submitted to the jury—whether or not the postdated check was taken in payment of the first quarterly premiums on the two policies of insurance. The jury found that they were so taken. On the assignments of error here the only question is as to the sufficiency of the evidence to sustain the verdict. The court approved the conclusion reached by the jury and in its memorandum stated:

"Whether or not either of the motions made by defendant should be granted depends upon the evidence in this case upon the point of the postdated check given by Edward W. Martin, deceased, to the agent of defendant, L. M. Shanklin, in evidence in this case; was it received as payment of first payment of premiums unconditionally, or not. I am of opinion the evidence is sufficient to sustain the verdict of the jury."

Shanklin testified relative to a conversation had with Martin at the time the application was made, and that on May 1 he telephoned

from Galesburg to some bank at East Moline (claimed to have been the Manufacturers State Bank of that place) inquiring whether it had ever had an account in the name of Edward W. Martin or E. W. Martin prior to May 1, 1930, and that a negative answer was given. However, it appeared in the deposition of the former cashier of the bank that a check for $20, dated March 26, 1930, signed by Martin, payable to the Carpenters Local No. 241, was paid by the bank on April 4, 1930. Shanklin further testified that after May 1 he tried to get Martin to pay the amount of the check and that it was not paid. On the state of the record the jury was not obliged to believe Shanklin's testimony, even if it could be considered as defensive in this case, where the issue was only as to the acceptance by the company of the postdated check as an unconditional payment of the first quarterly premium.

Defendant relies upon Sawyer v. Mutual L. Ins. Co. 166 Minn. 207, 207 N. W. 307. It is clearly distinguishable from this case. In that case the applicant for life insurance gave a five-dollar postdated check and a 60-day note for the amount of the premium on November 2, 1923. No receipt was issued. On December 12 the agent and the applicant had an interview, wherein the agent asked Sawyer to pay the note; Sawyer informed him that he would try to borrow the money for that purpose from the bank, later telling the agent that he was unable to do so but would try to pay it soon. The insurance company had no notice or knowledge of either the postdated check or the note received by the agent, and this feature is stressed in the opinion. After inability to collect the note and before applicant's death, the agent returned the policy to the company for cancelation. After the return of the policy to the company the agent wrote to Sawyer, telling him he was still holding the note and asking if he could not arrange to pay half of it and if so that they would put the policy in good standing for him. The trial court found that there was no agreement between the agent and the insured that the note and check were taken in payment of the premium and that no contract was ever completed between Sawyer and defendant. On appeal to this court there was an affirmance.

In the instant case a receipt was given; the company, having knowledge of the postdated check, approved the application and sent the policies to its agent for delivery to insured. The policies were dated April 10, 1930, and stated that the payment of the first quarterly premium and the application was the consideration for a term of insurance ending on July 10, 1930. In addition, the agent, having the policies in his possession, wrote Martin the letter hereinbefore quoted, stating: "I will be sending the policy to you in a short time." It was not stated that the sending of the policy was contingent upon payment of the postdated check. However, under the facts in this case, a manual delivery of the policies to Martin was not necessary in order to make the insurance effective. The policies were in force without such delivery to Martin. A contract was consummated. The evidence warranted the jury in concluding that the postdated check was unconditionally accepted as payment of the first quarterly premiums. Kilborn v. Prudential Ins. Co. 99 Minn. 176, 108 N. W. 861; Union C. L. Ins. Co. v. Taggart, 55 Minn. 95, 56 N. W. 579, 43 A. S. R. 474; Kimbro v. New York L. Ins. Co. 134 Iowa, 84, 108 N. W. 1025, 12 L.R.A.(N.S.) 421; Lueck v. New York L. Ins. Co. 185 Minn. 184, 240 N. W. 363; Fortin v. New York L. Ins. Co. 185 Minn. 523, 241 N. W. 673.

Affirmed.

OLSEN, Justice, took no part.

STONE, Justice (concurring in result).

It seems to me there is no question of fact in this case. Strange as it may seem to one entertaining the antipathy to postdated checks which their nature deserves, defendant authorized its agent to accept postdated checks. Here one was accepted, and its acceptance notified to defendant, the insurer, which thereupon issued the policy as stated in the opinion. All that was proved to the point of demonstration by the record. Hence it clearly appears that both parties had assented definitely and finally to be bound contractually. As matter of law that ends the inquiry and requires a decision for plaintiff under the rule of Sawyer v. Mutual L. Ins. Co. 166 Minn. 207, 207 N. W. 307.